620 So.2d 1062 (1993)
BOARD OF COUNTY COMMISSIONERS OF JACKSON COUNTY, Appellant,
v.
INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 653, and the Public Employees Relations Commission, Appellees.
No. 92-1818.
District Court of Appeal of Florida, First District.
June 22, 1993.
Rehearing Denied July 28, 1993.
*1063 Wayne L. Helsby, Hogg, Allen, Norton & Blue, P.A., Orlando, for appellant.
Ben R. Patterson, Patterson & Traynham, Tallahassee, for appellee Intern. Union of Operating Engineers, Local 653.
Ann Cowles-Fewox, Tallahassee, for appellee Public Employees Relations Com'n.
SMITH, Judge.
The County appeals a Final Order of the Public Employees Relations Commission (PERC) which found that the County violated section 447.501(1)(a) and (c), Florida Statutes (1991) by changing contractually based terms and conditions of employment. The Union cross-appeals that portion of PERC's order awarding the County attorney fees for defending a charge of direct dealing. PERC's Final Order rejected, in part, the Recommended Order of the hearing officer assigned to the case, who had recommended dismissal of the unfair labor practice (ULP) charge asserted by the Union and denial of both parties' motions for attorney's fees and costs. We reverse both as to the appeal and the cross-appeal.
The Union, which represents County operational services employees, filed an ULP charging the County with, among other things, violating its duty to bargain in good faith concerning proposed layoffs and reassignments of employees, and engaging in unlawful "direct dealing" with employees. For requiring the County to defend this latter charge, which PERC determined to be frivolous and unreasonable, PERC awarded the County attorney fees. In so doing, PERC erroneously rejected the hearing officer's order denying attorney fees because, as she said, "there was substantial conflicting evidence which I had to resolve by assessing the credibility of numerous *1064 witnesses." The facts, which will not be recited in this opinion, were not conclusive and do not demonstrate that the charge was frivolous, unreasonable or groundless when filed or that the Union continued the litigation after it became clear that the charge was without merit. We therefore reverse, on the Union's cross-appeal, the order awarding attorney fees to the County for its defense of the direct dealing charge.
Turning to the County's appeal, the facts as found by the hearing officer, which were accepted in toto by PERC, establish that the parties were bargaining for a contract, in the fall of 1990, when it became apparent that the County was going to suffer an estimated $600,000 shortfall in gas tax revenues, which revenues exclusively fund the County's Road and Bridge Department. The County Commission enacted an ordinance giving the County Administrator, Leon Foster, the authority to restructure and/or reorganize the department to meet the shortfall. Foster attempted to minimize the effect on employees by making the majority of the cuts to operations and capital expenditures. On November 28, 1990, he met with department employees, notified them of the budgetary problems, and told the employees that there would be some layoffs and cutbacks. It was reported in the local newspaper the following day that more than five positions would be eliminated. The Union's shop steward became aware of the article within a few days of its publication.
In the meantime, the parties had come to an agreement on a contract. The County unanimously ratified the agreement at a public commission meeting on December 11, 1990. Wallace Brannon, the Union's chief negotiator, was verbally notified by Foster in December that the commission had approved the agreement.
Early in December 1990, Foster decided on a reorganization plan. He then met with Brannon on or about December 18, 1990, and discussed the plan. Through a process taking into account a myriad of important considerations, union membership not being one of them, Foster arrived at a list of five employees to be laid off. Other employees would be reassigned to lower paying positions.[1]
In early January 1991, Foster met with Brannon and showed him the list of five employees who had not been placed. Foster told Brannon that he was still working on the list and that he was trying to minimize the number of people to be laid off. Foster asked Brannon not to divulge the names on the list because the final decision had not been made. Brannon never requested that he or the Union be allowed to participate in the reorganization or to receive any further notification.
On January 23, 1991, the Union held a second ratification election and the bargaining unit voted to ratify the contract. The hearing officer concluded that the parties' agreement became binding on January 23, 1991,[2] although the parties did not execute the collective bargaining agreement until January 31, 1991. Article 25 of the bargaining agreement set forth certain procedures to be followed in the event of layoffs.
Foster and Brannon also discussed the scheduled layoffs again on January 31, 1991. Foster told Brannon that five employees would be laid off on February 1, 1991, and as they discussed, the employees were laid off the next day. At no time prior to this date did Brannon or the Union request, verbally or in writing, that the County negotiate with the Union over the decision to layoff and/or reassign employees, or over the impact of these decisions.
It was not until May 14, 1991, that Brannon questioned the layoff procedure, which was allegedly contrary to the procedures outlined in Article 25 of the parties' contract. Foster explained that if the contract had been followed, 10 to 12 employees would have been laid off instead of 5. Foster and Brannon agreed that an election *1065 involving all of the bargaining unit members would take place to determine if the employees wanted the County to follow the contractual layoff procedure. Nevertheless, when the election was subsequently held, only union members were allowed to vote and they voted to follow the contractual layoff procedure. After the election, Foster refused to change the layoff decision because employees who were not members of the union were not allowed to vote in the election.
The hearing officer concluded that the Union had waived its right to bargain over the layoff decision by inaction, because after it received notice of the proposed change, it failed to make an effective demand to bargain. PERC, however, reversed this conclusion of the hearing officer, grounding its ruling in part upon the erroneous premise that it has never held that a union can passively waive an objection to an alteration of a contractual provision that substantially affects or directly establishes rights of individual employees. In fact, as appellant correctly points out, PERC has done just that. Pensacola Junior College Faculty Association v. Pensacola Junior College, 16 FPER para. 21268 (1990), aff'd., 593 So.2d 254 (Fla. 1st DCA 1992). PERC also concluded that the notice of the proposed alteration was woefully deficient and informally provided only one day prior to the effective date of the layoffs, amounting to nothing more than a fait accompli. PERC further ruled that a request to deviate from a contractual provision must be provided in a request to negotiate, not merely by advancing notice of an intended change. The Union was awarded attorney fees for successfully litigating the charge of failure to bargain. We are compelled to reverse PERC's order.
Waiver is the intentional or voluntary relinquishment of a known right, or conduct which warrants an inference of the relinquishment of a known right. Certainly, a party may waive a contractual right. The question of waiver is usually one of fact. 22 Fla.Jur.2d Estoppel and Waiver § 86 (1980).
The hearing officer's findings of fact are supported by competent, substantial evidence in the record and there is no contention otherwise. The hearing officer, not PERC, was in the best position to determine when the Union had notice of the proposed layoffs. The Union knew at least two months before the layoffs that layoffs were going to be necessary because of the budget shortfall. A month before the layoffs, the Union was given a list of the five employees to be laid off. The Union stood by and did nothing. Even after the layoffs occurred, it was three months before the Union even made an inquiry about the layoffs. While apparently it is the Union's position that it failed to act because it did not know the contract had been ratified, the hearing officer found that Foster verbally notified Brannon in December 1990 that the Commission had approved the agreement.
In its order, PERC acknowledges that unions and employers often informally agree to deviate from the contract. The order then states, somewhat equivocally, that "an alteration of a contractual layoff procedure may well require ratification."[3] PERC's order then concludes that even if it is assumed that an employee contractual right may be waived by the Union, "the notice of the proposed alteration [in this case] was woefully deficient," a statement which we find indirectly contradicts the findings of fact of the hearing officer. While PERC contends the hearing officer erroneously applied the legal principles of notice and waiver to her findings of fact, PERC does not explain its position, except for the heretofore mentioned erroneous statement that it has never held that a union can passively waive an objection to an alteration of a contractual provision. Finally, PERC announces a new policy which shall govern the actions of parties: Henceforth, a request to deviate from a *1066 contractual provision must be provided in a request to negotiate, and not merely by advancing notice of an intended change. There is no citation of authority for this new directive or policy.
While we acknowledge PERC's admitted expertise in labor law and that PERC is the agency charged with administering the unfair labor practices statute, we hold that under the circumstances of this case, PERC erroneously concluded that the County was guilty of an unfair labor practice. As already stated, PERC is wrong when it claims it has never held that a union can passively waive an objection to a proposed alteration in an existing contract. As argued by the County, on more than one occasion PERC has directly applied the waiver principles to situations involving proposed deviations from contractual provisions. Pensacola Junior College Faculty Association v. Pensacola Junior College; and Sarasota Professional Fire Fighters v. City of Sarasota, 13 FPER para. 18033 (1986). An agency will be reversed where the agency has erroneously interpreted and applied the law. Section 120.68(9), Florida Statutes (1991); and Pasco County School Board v. Florida Public Employees Relations Commission, 353 So.2d 108 (Fla. 1st DCA 1977). Because in the past, PERC has permitted a union to waive its right to demand bargaining over changes in the contractual provisions of the collective bargaining agreement, the County had a right to, and alleges that it did, rely on PERC's past rulings. The County had no reason to know that its conduct was violative of PERC's now newly-announced policy for determining the validity of waivers. It would be "unfair" to the County to penalize the County by declaring it guilty of an unfair labor practice and violating the law, when the County's actions were consistent with PERC's then existing interpretation of the unfair labor practices statute. This is especially so where, as here, under no reasonably objective view of the evidence can the County's actions be characterized as "unfair." For this reason, as well, PERC's award of attorney's fees against the County cannot stand.
REVERSED.
BARFIELD and MICKLE, JJ., concur.
NOTES
[1] The reassignment of employees is not at issue in this appeal.
[2] PERC disagreed, concluding that the parties were bound by their agreement at the time it was ratified by the County on December 11, 1990.
[3] Evidently, PERC has now made it clear that an amendment to a collective bargaining agreement must be ratified by the bargaining unit employees. Carroll v. City of Tampa and Hillsborough County Police Benevolent Association, Inc., PERC Case Nos. CA-91-084 and CB-91-019, decision May 21, 1992.