932 So.2d 402 (2006)
Dale D. HORNBLOWER, Appellant,
v.
Toynetta C. COBB, Appellee.
No. 2D05-1265.
District Court of Appeal of Florida, Second District.
April 7, 2006.
Rehearing Denied May 9, 2006.
*404 Hinda Klein of Conroy, Simberg, Ganon, Krevans & Abel, P.A., Hollywood, for Appellant.
David M. Caldevilla and Nicolas Q. Porter of de la Parte & Gilbert, P.A., Tampa; and Royce C. Haddad, Jr., of Haddad & Shuttera, P.A., Clearwater, for Appellee.
LaROSE, Judge.
Dale D. Hornblower appeals the trial court's denial of his motion to vacate a clerk's default and for a new trial. We affirm in part and reverse in part.
This matter stems from a September 20, 2001, automobile accident involving Mr. Hornblower and Toynetta C. Cobb. Southern Group Indemnity (SGI), Mr. Hornblower's insurer, conceded in the trial court that what happened after the accident was a "succession of errors"an understatement, to be sure, in light of Mr. Hornblower's absence from all proceedings below and SGI's apparent inability to handle a personal injury claim.
Ms. Cobb reported the accident to SGI. Without controversy, SGI promptly paid her property and rental car claims. SGI also sent an accident report form to Mr. Hornblower. He never completed and returned the form. On November 5, 2001, SGI received a letter of representation from Ms. Cobb's counsel concerning Ms. Cobb's personal injury claim. SGI wrote to Ms. Cobb's counsel and confirmed liability coverage for the accident.
Approximately one year later, in November 2002, Ms. Cobb's counsel sent SGI a $20,000 demand to settle Ms. Cobb's personal injury claim. On that same day, SGI sent a $2000 settlement offer to Ms. Cobb, an offer she rejected. SGI claims to have sent a follow-up letter to Ms. Cobb's counsel several months later, to which it received no reply. According to Ms. Cobb's counsel, however, SGI failed to respond to numerous telephone messages, left as late as July 2003, attempting to discuss settlement. Instead, Ms. Cobb's counsel received only a form letter stating that SGI would close its file if Ms. Cobb did not respond to SGI's earlier $2000 settlement offer, an offer Ms. Cobb previously rejected. Up to this point, SGI had not retained counsel.
Apparently rebuffed on the settlement front, Ms. Cobb sued Mr. Hornblower in August 2003. Mr. Hornblower was served with process but, as far as we know, he never contacted Ms. Cobb, her counsel, or SGI. Unaware of the litigation and without further efforts to contact Ms. Cobb's counsel, SGI closed its file in September 2003.
Ms. Cobb moved for and secured a clerk's default in mid-September 2003. Mr. Hornblower was served with the motion and the default. Ms. Cobb's counsel sent copies to SGI. Neither Mr. Hornblower nor SGI contacted Ms. Cobb or her counsel. According to SGI, in early October 2003, its adjuster faxed the default papers to its counsel. Apparently, this is the first time that SGI attempted to retain counsel. Unfortunately, SGI did not confirm receipt of the materials; its counsel never received them. In approximately November 2003, SGI assigned Ms. Cobb's claim to a litigation adjuster. Within a matter of days, the adjuster was injured in a motorcycle accident and did not return to work until late January 2004. For reasons unknown, SGI left the file unattended.
Having heard nothing further from SGI or Mr. Hornblower and with a clerk's default in hand, Ms. Cobb turned her attention to the remaining issue in the trial court, damages. In December 2003, she moved to withdraw her jury trial demand. *405 She served her motion on Mr. Hornblower. He did not object to the motion, attend the hearing, or, as far as we can determine, advise SGI. In mid-January 2004, the trial court granted Ms. Cobb's motion and sent a copy of its order to Mr. Hornblower. Nothing indicates that Mr. Hornblower forwarded the order to SGI. Oblivious to developments in Ms. Cobb's lawsuit, SGI reassigned the claim to a new adjuster in early February 2004. SGI offers no explanation for the approximately three-month delay in reassigning the claim.
In the later part of March 2004, Ms. Cobb filed a motion for nonjury trial. She served a copy on Mr. Hornblower. As a courtesy, her counsel sent a copy to SGI, together with a $10,000 settlement demand. SGI's adjuster took no action other than to stuff the motion and the settlement proposal in the file.
In late March 2004, the trial court scheduled a nonjury trial. A copy of the scheduling order was sent to Mr. Hornblower and to SGI. Again, we are aware of no contact between Mr. Hornblower and SGI at this critical stage. There is no question, however, that SGI received the order. Given the course of events outlined above, it is no surprise that neither Mr. Hornblower nor SGI appeared at the damages trial. After a June 16, 2004, trial, the trial court entered a $320,491.96 final judgment for Ms. Cobb and against Mr. Hornblower. The trial court mailed the final judgment to Mr. Hornblower, who, again, as far as we can tell, did not advise SGI.
As fate would dictate, shortly after entry of the final judgment, SGI's adjuster finally reviewed the file and realized that he had not acted on the lawsuit documents he had received previously. He called SGI's counsel, who knew nothing about the case. Upon checking the court file, counsel discovered the final judgment. The claims adjuster no longer works for SGI.
In late June 2004, SGI's counsel finally appeared in the lawsuit for Mr. Hornblower. She moved to vacate the clerk's default and sought a rehearing or a new trial because Mr. Hornblower had not waived his jury trial right. Counsel argued that the clerk's default should be vacated because Ms. Cobb's counsel knew that SGI intended to defend Mr. Hornblower, but failed to advise SGI about the lawsuit. Under such circumstances, counsel argued that Mr. Hornblower need not demonstrate excusable neglect, due diligence, or a meritorious defense. See Fla. R. Civ. P. 1.540(b). Nevertheless, the affidavits[1] filed in support of Mr. Hornblower's motion acknowledged that, "as a result of a succession of errors on the part of SGI, the carrier was unable to defend its insured Hornblower and Hornblower did not appear for the subsequently set non-jury trial" and that Mr. Hornblower had a meritorious comparative negligence defense. Ms. Cobb opposed the motion and filed an affidavit chronicling her counsel's unsuccessful attempts to communicate with SGI. The trial court denied the motion.

Clerk's Default
The trial court denied Mr. Hornblower's motion to vacate the clerk's default. We review that order under an abuse of discretion standard. Marshall Davis, Inc. v. Incapco, Inc., 558 So.2d 206, 207-08 (Fla. 2d DCA 1990). "Where there exists any reasonable doubt in the matter, and where there has been no trial on the merits, the trial court is to exercise its discretion in the direction of vacating the default." Apolaro v. Falcon, 566 So.2d 815, 816 (Fla. 3d DCA 1990) (citing North Shore Hosp., Inc. v. Barber, 143 So.2d 849, *406 852-53 (Fla.1962)); see also Geer v. Jacobsen, 880 So.2d 717, 720 (Fla. 2d DCA 2004) (acknowledging strong preference for deciding lawsuits on merits).
Yet, Mr. Hornblower is not entitled automatically to relief. He must establish: (a) excusable neglect, (b) a meritorious defense, and (c) the exercise of due diligence upon learning of the default. Coquina Beach Club Condo. Ass'n, Inc. v. Wagner, 813 So.2d 1061, 1063 (Fla. 2d DCA 2002); Fla. R. Civ. P. 1.540(b). Even if we accept that Mr. Hornblower had a meritorious defense and that his SGI-appointed counsel promptly sought to vacate the clerk's default, the absence of excusable neglect compels us to affirm the trial court's ruling.
Although we are mindful that a trial on the merits is preferred to a default, we cannot say that the trial court abused its discretion. Mr. Hornblower received process and copies of subsequent court filings. But, he did not participate in any of the trial court proceedings. Particularly noteworthy, Mr. Hornblower came forward with no explanation for his apparent inaction throughout the course of Ms. Cobb's lawsuit. The record is silent as to any facts that might support a finding of excusable neglect by Mr. Hornblower.
We reach a similar conclusion as to SGI's efforts on behalf of Mr. Hornblower. SGI knew of the accident that spawned this dispute. Unfortunately, we are left with the distinct impression that SGI mishandled the processing of Ms. Cobb's personal injury claim. The record reflects that SGI delayed in securing counsel for Mr. Hornblower, disregarded settlement overtures, and ignored critical court filings. The record contains no information suggesting that SGI had any meaningful procedure in place that, if followed, would have avoided the unfortunate events that resulted in a significant judgment against Mr. Hornblower. Cf. Mercury Marine Indus., Inc. v. Dillon, 779 So.2d 356, 357 (Fla. 2d DCA 2000) (holding failure to follow corporate policy can constitute excusable neglect). SGI's handling of the claim, indeed, was a "succession of errors." But, we must conclude that Mr. Hornblower has failed to establish excusable neglect by SGI. "[G]ross negligence cannot constitute excusable neglect." Otero v. Gov't Employees Ins. Co., 606 So.2d 443, 444 (Fla. 2d DCA 1992).
Mr. Hornblower argues, unconvincingly, that Ms. Cobb knew that SGI would defend him and that it should have received notice of the default motion. The record does not support this position. SGI had the motion for default as well as the clerk's default, albeit after the fact, as early as September 23, 2003. SGI claims to have forwarded those materials to counsel but it provides no explanation of procedures in place to ensure receipt and prompt attention by its counsel. Thereafter, the default papers and other lawsuit-related documents remained unattended in SGI's file until after entry of the final judgment. Until entry of the final judgment, Ms. Cobb had no notice that Mr. Hornblower was represented by counsel or that SGI or anyone else intended to defend him. To the contrary, SGI told Ms. Cobb that it was closing its file.
The cases Mr. Hornblower cites to support his position that he need not demonstrate excusable neglect are inapposite. See, e.g., Nat'l Union Fire Ins. Co. v. McWilliams, 799 So.2d 378, 379 (Fla. 4th DCA 2001) (plaintiff received notice of representation from defendant's counsel); Serrano v. Ayala, 728 So.2d 1231 (Fla. 3d DCA 1999) (plaintiff knew that defendant intended to defend lawsuit and default not due to defendant's gross negligence); Levante v. Corallo, 688 So.2d 427, 428 (Fla. 3d DCA 1997) (parties actively engaged in *407 settlement negotiations and defendant led to believe responsive pleadings unnecessary); Nico Leasing, Inc. v. Viacao Barao De Maua Ltda., 668 So.2d 335, 336 (Fla. 3d DCA 1996) (plaintiff actually aware that defendant represented by counsel); Ole, Inc. v. Yariv, 566 So.2d 812, 814 (Fla. 3d DCA 1990) (plaintiff gave carrier extension of time to procure counsel for defendant); Flaxman v. Metro. Life Ins. Co., 340 So.2d 515, 516 (Fla. 3d DCA 1976) (plaintiff's attorney actively in contact with defendant after filing suit, but did not disclose filing). After SGI paid Ms. Cobb's property and car rental claims, there was no meaningful contact between SGI and Ms. Cobb related to her personal injury claim, despite her counsel's efforts to resolve that claim. Because the trial court did not abuse its discretion, we affirm its order to the extent it refused to vacate the clerk's default on liability.

New Trial
Mr. Hornblower argues that the trial court erred in having a nonjury damages trial without Mr. Hornblower's consent. The trial court concluded that Mr. Hornblower waived any objection by failing to respond to Ms. Cobb's motion to withdraw her jury trial demand.
The trial court's order denying Mr. Hornblower's motion for rehearing or new trial also is reviewed under the abuse of discretion standard. Seaboard Sys. R.R., Inc. v. Peeples, 475 So.2d 916, 917 (Fla. 2d DCA 1985). Typically, waiver is a factual matter for the trial court to decide. Bd. of County Comm'rs of Jackson County v. Int'l Union of Oper. Eng'rs, Local 653, 620 So.2d 1062, 1065 (Fla. 1st DCA 1993). Whether a jury trial can be waived by mere inaction, however, is a legal issue subject to de novo review. See S. Baptist Hosp. of Fla., Inc. v. Welker, 908 So.2d 317, 319 (Fla.2005).
"The right of trial by jury shall be secure to all and remain inviolate." Art. I, § 22, Fla. Const. Yet, it seems incongruous that Mr. Hornblower could ignore the trial court proceedings and, when faced with an adverse result, get a second bite of the apple. We also recognize the added time and expense associated with conducting a jury trial, a seemingly needless burden when one has defaulted on liability and apparently disregarded all opportunities to become engaged in the ongoing litigation. But, in light of the constitutional sanctity afforded to trial by jury, we must acknowledge that "[a] demand for trial by jury may not be withdrawn without the consent of the parties." Fla. R. Civ. P. 1.430(d). The rule applies even where, as here, the defendant has defaulted on the liability issue. See Holiday Gulf Builders, Inc. v. Tahitian Gardens Condo., Inc., 443 So.2d 143, 145 (Fla. 2d DCA 1983).
The purpose of [rule 1.430(d)] is to safeguard the existence of the right of jury trial to non-demanding parties where a demand has been made by one of the parties. Without the provision one of the parties might demand a jury and then after the time for making the demand had gone by, withdraw his demand, and leave the non-demanding parties without the right to trial by jury.
Fla. R. Civ. P. 1.430 cmt. (1967).
Mr. Hornblower did not consent expressly to a nonjury damages trial. Waiver of the jury trial right must be manifested by affirmative action, such as "a specific waiver in writing or by announcement in open court." Barth v. Fla. State Constructors Serv., Inc., 327 So.2d 13, 15 (Fla.1976); Baron Auctioneer, Inc. v. Ball, 674 So.2d 212, 214 (Fla. 4th DCA 1996). Active participation in a nonjury trial, without objection, can also constitute a waiver. Shapray v. Hoffman, 859 So.2d 542, 543 (Fla. 4th DCA 2003); Del-Rena, *408 Inc. v. KFM, Inc., 789 So.2d 397, 399 (Fla. 4th DCA 2001); Martin v. Ullman, 555 So.2d 1232 (Fla. 3d DCA 1989). Silence or inaction, alone, is insufficient. Baron Auctioneer, 674 So.2d at 214; Loiselle v. Gladfelter, 160 So.2d 740, 742 (Fla. 3d DCA 1964).
Mr. Hornblower's apparent disregard of the trial court proceedings troubles us. He was served with all relevant court filings. For reasons not disclosed in the record, he did nothing. We are confident that had the trial court entered a final judgment more in line with Ms. Cobb's earlier settlement demands, Mr. Hornblower and SGI, would "have gone on [their] way with nary a care in the world." See Martin, 555 So.2d at 1233. But, this apparent acquiescence cannot satisfy rule 1.430(d). See Loiselle, 160 So.2d at 742 ("[W]aiver by implication ... must be more than a mere failure to appear and contest the issues of the case."). Accordingly, the trial court erred in ruling that Mr. Hornblower waived his right to a jury trial. We reverse and remand for a new trial solely on the issue of damages.
Affirmed in part, reversed in part, and remanded.
SILBERMAN, J., Concurs.
ALTENBERND, J., Concurs with opinion.
ALTENBERND, Judge, Concurring.
I fully concur in the affirmance of the trial court's decision to deny the motion to vacate the clerk's default. With much greater reluctance, I also concur in the reversal of the judgment based on the trial court's decision to try the case without a jury.
I write to emphasize that I do not believe that Mr. Hornblower has a constitutional right to a new trial in this situation. After the entry of a default, he was provided with copies of the motion for nonjury trial, the order granting that motion, and the notice scheduling the case for nonjury trial. There is no deprivation of due process in this case, and I conclude that it would be reasonable to declare that he "waived" his right to rehearing concerning the trial court's decision to conduct a nonjury trial by failing to object or attend. Cf. Sunwest Reliance Acquisitions Group, Inc. v. Provident Nat'l Assurance Co., 875 S.W.2d 385, 388 (Tex.App.1993) (holding that defendant who failed to object to nonjury trial waived the right to complain on appeal that he/she was denied right to a jury trial).
Florida Rule of Civil Procedure 1.430(d) begins with the heading, "Waiver," but, as the court's opinion explains, it requires the "consent of the parties" to withdraw a demand for trial by jury. Mr. Hornblower may have waived rights by inaction in this case, but "consent" in this context appears to require some affirmative action that he did not take.
I suspect that many cases involving such defaults are ultimately tried without a jury. I would encourage the Civil Procedure Rules Committee to consider whether the language of this rule should be amended.
NOTES
[1] In seeking to vacate the default, SGI submitted affidavits from its counsel and two adjusters. No affidavit or other testimony was presented by Mr. Hornblower.