BENTON, C.J.
A union that represents teachers and paraprofessionals, the Manatee Education Association, FEA, AFT (Local 3821), AFL-CIO (the union), appeals a final order of the Public Employees Relations Commission (PERC) dismissing an unfair labor practice charge the union filed against the School Board of Manatee County (School Board), alleging that the School Board had committed an unfair labor practice by improperly invoking section 447.4095, Florida Statutes (2008). Concluding that PERC erred in dismissing the unfair labor practice charge without determining whether a “financial urgency” within the meaning of section 447.4095 existed, we reverse the final order in part, and remand for further proceedings.
A public employer may declare a “financial urgency” pursuant to section 447.4095, and proceed accordingly. But the employer’s mere declaration cannot conclusively resolve the question. Absent some compelling state interest — determined to be such in a neutral forum, ultimately subject to judicial review — a public employer cannot unilaterally abrogate a collective bargaining agreement, consistently with public employees’ constitutional right to bargain collectively. See Art. I, § 6, Fla. Const. (“The right of employees, by and through a labor organization, to bargain collectively shall not be denied or abridged.”).
Once the fourteen-day period specified in section 447.4095 has run, the union is free to file an unfair labor practice charge disputing the employer’s claim of “financial urgency.” In that event, it is incumbent on PERC to decide whether a “financial urgency” within the meaning of the statute — construed in keeping with the Florida Constitution — actually existed. If so, PERC should dismiss the charge. If not, PERC should order appropriate relief.
The public employer does not have to obtain a ruling that a genuine “financial urgency” exists before it proceeds under section 447.4095. If the union chooses not to participate in negotiations contemplated by section 447.4095, it runs the risk that PERC will find that a “financial urgency” did exist, and dismiss its unfair labor practice charge, with the result that any changes implemented pursuant to section 447.4095 will remain in effect. But the union need not participate in proceedings under section 447.4095 as a precondition to obtaining a decision on whether there was in fact a “financial urgency.”
In the present case, the School Board and the union entered into a three-year collective bargaining agreement (CBA) in 2007. The CBA provided that eligible employees would receive an automatic, annual “step” increase in salary, including an increase which was to have become effective for the 2008/2009 fiscal year on August 15, 2008. But the CBA also provided for the “reopening” of negotiations on its compensation provisions on or before June 1 of each year in which it was in force.
On May 5, 2008, Dr. Dearing, the Superintendent of Schools for Manatee County, informed the union that, given legislative funding levels, the School Board was declaring a “financial urgency” requiring the *1179 modification of the CBA pursuant to section 447.4095. The statute provides:
In the event of a financial urgency requiring modification of an agreement, the chief executive officer or his or her representative and the bargaining agent or its representative shall meet as soon as possible to negotiate the impact of the financial urgency. If after a reasonable period of negotiation which shall not exceed 14 days, a dispute exists between the public employer and the bargaining agent, an impasse shall be deemed to have occurred, and one of the parties shall so declare in writing to the other party and to the commission. The parties shall then proceed pursuant to the provisions of s. 447.403. An unfair labor practice charge shall not be filed during the 14 days during which negotiations are occurring pursuant to this section.
§ 447.4095, Fla. Stat. (2007) (emphasis supplied). The union responded that any declaration of financial urgency was premature at best, but made it clear that it was willing to reopen negotiations on issues concerning compensation under the CBA’s reopener clause, in light of the School Board’s financial circumstances.
On May 7, 2008, the Superintendent reiterated his claim that the School Board was facing a financial urgency. The Board then went forward unilaterally under section 447.4095, informing the union of the Board’s proposed modifications to the CBA on May 20, 2008. The union again responded that proceeding under section 447.4095 was unwarranted, but that it was willing to begin negotiations immediately under the reopener provision.[1]
On May 23, 2008, the School Board notified PERC that it was declaring an impasse, based on the union’s refusal to bargain under section 447.4095 and the failure of the parties to reach an agreement within the fourteen-day statutory time period, and requested the appointment of a special magistrate pursuant to section 447.403, Florida Statutes (2007). The union objected to the declaration of impasse and to the appointment of a special magistrate, on grounds that section 447.4095 had been improperly invoked in the absence of a true “financial urgency.”
The union persisted in this view even after PERC appointed a special magistrate, and on that basis declined to participate in proceedings before the special magistrate. The special magistrate conducted a hearing without the union present and issued a report on July 11, 2008, which recommended acceptance of the School Board’s position on all impasse issues.[2] The special magistrate ruled that whether or not the School Board had properly declared financial urgency was not a question for him to decide.
On July 17, 2008, the Superintendent sent a letter to PERC ostensibly rejecting the magistrate’s recommendations, while indicating he would advocate that the School Board, sitting as the legislative *1180 body to resolve the alleged impasse, adopt the selfsame recommendations. His stated purpose in taking this approach was to give the union an opportunity to present proposals to the School Board during an impasse resolution meeting conducted pursuant to section 447.403(4), Florida Statutes (2008). In a special meeting held August 4, 2008, the School Board approved the Superintendent’s recommendation to impose the changes the special magistrate had recommended in the section 447.4095 process.[3]
On August 7, 2008, the union filed with PERC an unfair labor practice charge against the School Board. The union alleged the School Board violated sections 447.501(l)(a) and (c), Florida Statutes (2008),[4] when it improperly invoked section 447.4095 and refused to postpone the legislative body hearing so that then pending and already fruitful Interest Based Bargaining negotiations could go forward.[5] The School Board asserted that the union had “waived its right to bargain the matters raised ... by failing to negotiate in good faith or at all, by refusing to take part in any of the [section 447.4095] process, including the special magistrate’s hearing, by failing to reject the special magistrate’s recommendation and failing to participate in the public hearing conducted by the School Board.”
After a hearing on the union’s unfair labor practice charge on October 3, 2008, the PERC hearing officer noted that the union had declined to participate in the section 447.4095 bargaining process, and determined that no unfair labor practice was committed when the School Board invoked that provision without first establishing it had no other viable alternative to meet a financial urgency. The PERC Final Order rejected the union’s assertions that the School Board was required to demonstrate a compelling state interest, and no other possible source for funding contractual obligations, prior to proceeding under section 447.4095.
A majority of the PERC commissioners also concluded that the union was “required to engage in an insulated period of *1181 negotiations over the impact of the financial urgency,” and concluded that because the union “refused to engage in such negotiations, the School [Board’s] declaration of an impasse, and subsequent modification to the collective bargaining agreements at issue pursuant to the impasse resolution procedures set forth in Section 447.40B, was not unlawful.” The majority did not reach the merits of the union’s contention that the School Board had improperly declared a financial urgency where none existed. In dissent, Commissioner Kossuth disagreed with the majority view that participation in the 14-day period of negotiations was a statutory prerequisite for filing an unfair labor practice charge contesting the existence of a financial urgency.
“Our review in this case is de novo. While we acknowledge the case law that accords deference to PERC and warns that PERC’s interpretation of the law should not be reversed unless clearly erroneous, we ... do not have to accord deference to PERC’s interpretation of the law where that interpretation conflicts with the plain and ordinary meaning of the statute.” Fla. Pub. Emps. Council 79, AFSCME, AFL-CIO v. State, 921 So.2d 676, 681 (Fla. 1st DCA 2006) (citation omitted). See also Colbert v. Dep’t of Health, 890 So.2d 1165, 1166 (Fla. 1st DCA 2004) (concluding judicial deference need not be given to the agency’s interpretation of law if that interpretation conflicts with the plain and ordinary intent of the law); Doyle v. Dep’t of Bus. Reg., 794 So.2d 686, 690 (Fla. 1st DCA 2001) (“An administrative agency’s interpretation of a statute that it applies is usually accorded substantial deference unless the interpretation is clearly erroneous”).
We reject the union’s assertion that the School Board was required to prove the existence of a financial urgency before proceeding under section 447.4095. Although the availability of section 447.4095 turns on “a financial urgency requiring modification of an agreement,” the statute also directs the parties to “meet as soon as possible to negotiate the impact of the financial urgency,” and provides that an “unfair labor practice charge shall not be filed during the 14 days during which negotiations are occurring pursuant to this section.” As the final order under review states, section 447.4095 was “intended to provide public employers and bargaining agents an opportunity to engage in abbreviated impact bargaining when faced with a financial urgency requiring modification of an agreement.” Requiring proof of financial urgency before resort to section 447.4095 could result in substantial delays, delays which could effectively eliminate the ability to address a financial urgency, frustrating the obvious purpose of the statute. We affirm PERC’s determination that section 447.4095 does not place any temporal preconditions on the initiation of the process section 447.4095 authorizes.
But PERC’s determination that a union must participate in section 447.4095 negotiations in order to file (at some later time) an unfair labor practice charge — on grounds the public employer improperly invoked section 447.4095 in the absence of a real “financial urgency” — has no statutory warrant, is clearly erroneous, and must be reversed. To permit public employers to declare a financial urgency, then to modify a collective bargaining agreement unilaterally, without permitting the union to contest the accuracy of the declaration, would render collective bargaining agreements illusory and the collective bargaining process nugatory. In construing Chapter 447, it is important to bear in mind “the Florida Constitution’s protection of the right of collective bargaining against statutory impairment.” Sch. Bd. of Polk Cnty. v. Polk Educ. Ass’n, Inc., 480 So.2d *1182 1360, 1363 (Fla. 1st DCA 1985). “[T]he Supreme Court of Florida has ruled that (except for the prohibition against strikes and subject to the legislative power over appropriations) public employees have the same right to bargain collectively that private employees have.” Chiles v. State Emps. Attorneys Guild, 714 So.2d 502, 504-05 (Fla. 1st DCA 1998), aff'd., 734 So.2d 1030 (1999) (citing City of Tallahassee v. Pub. Emps. Relations Comm’n, 410 So.2d 487 (Fla.1981)).
Without any statutory authority, PERC’s interpretation requires that unfair labor practice allegations arising from a public employer’s invocation of section 447.4095be litigated as part of the section 447.4095process itself. The special magistrate rejected this view, as do we. Section 447.4095contains no requirement that the question whether a financial urgency actually existed must be negotiated or otherwise determined as part of the section 447.4095process. Nothing in section 447.4095evinces a legislative purpose to abrogate or alter a party’s right to charge an unfair labor practice pursuant to section 447.501.
In response to the School Board’s invocation of section 447.4095 in the present case, the union “promptly and repeatedly asserted” at every stage that proceeding under section 447.4095 was not proper or required. See Bd. of Cnty. Comm’rs of Jackson Cnty. v. Int’l Union of Operating Engineers, Local 653, 620 So.2d 1062, 1065 (Fla. 1st DCA 1993) (“Waiver is the intentional or voluntary relinquishment of a known right, or conduct which warrants an inference of the relinquishment of a known right.”).
In Florida State Lodge, Fraternal Order of Police, Ocala Local 129 v. City of Ocala, 24 F.P.E.R. 29335 at 582-83 (1998), the City argued that the union — by protesting a proposed pay-period-change, without making a demand to negotiate — waived its right to bargain over any alteration of the pay schedule.[6] PERC rejected this argument, stating:
[T]he City asserts that the [union] was required to renegotiate the provisions in the collective bargaining agreement relating to the pay period upon receiving notice of the City’s desire to do so. According to the City, the [union’s] explicit refusal to re-negotiate constitutes a waiver of its rights....
Absent a reopener provision or proof of financial urgency, a union is not obligated to negotiate changes to contractual provisions merely upon a request to do so by the public employer. See Section 447.4095, Fla. Stat. (1997)....
[[Image here]]
The Jackson County[7] decision relied upon by the City does not warrant a *1183 different conclusion. In Jackson County the union did not explicitly refuse to re-negotiate a contract provision; the union failed to respond when the public employer announced its intention to deviate from the collective bargaining agreement.
[[Image here]]
The [union’s] conduct in this case bears little resemblance to the conduct of the union in Jackson County. In response to the City’s announcement that it was changing the pay schedule, the [union] promptly and repeatedly asserted its right to uphold the pay schedule provisions in the collective bargaining agreement. The conduct of the [union] does not warrant an inference of relinquishment of its contractual rights.
Id. at 583. The City of Ocala case did not involve a public employer invoking section 447.4095, and PERC’s determination that the City violated sections 447.501(l)(a) and (c) did not involve an interpretation of section 447.4095. But the language in the City of Ocala decision that, absent a reo-pener provision or a financial urgency, the union was not required to renegotiate, is a correct statement of the law.
The union asks us to hold that the decision in Chiles v. United Faculty of Florida, 615 So.2d 671 (Fla.1993), provides the test for “financial urgency” and to find that no financial urgency existed in this case. Chapter 447 contains no definition of “financial urgency.” As the final order notes, the issue was one of first impression before PERC, inasmuch as PERC “has never interpreted Section 447.4095 in the context of a public employer declaring a financial urgency under this statute.” But we do not reach the issue. At this juncture, we decline to decide what constitutes a “financial urgency” within the meaning of section 447.4095, or to make the initial factual determination regarding whether the School Board was faced with such a “financial urgency.”
On this question, we defer initially to PERC. “An agency has the principal responsibility of interpreting statutes dealing with matters within their regulatory jurisdiction and expertise.” Fla. Pub. Emps. Council 79, AFSCME v. Daniels, 646 So.2d 813, 816 (Fla. 1st DCA 1994) (citing Public Employees Relations Comm’n v. Dade Cnty. Police Benevolent Ass’n, 467 So.2d 987 (Fla.1985)). “PERC’s field of expertise is public sector labor regulation.” Doyle, 794 So.2d at 690.
We affirm PERC’s holding that the School Board did not forfeit the right to proceed under section 447.4095 by not seeking an adjudication of “financial urgency” before resort to section 447.4095 proceedings. But we reverse PERC’s holding that the union waived its right to contest the accuracy of the School Board’s declaration of financial urgency because the union did not participate in negotiations under section 447.4095, and remand for further proceedings.
Affirmed in part, reversed in part, and remanded.
WOLF and ROBERTS, JJ., concur.

. Herb Tschappat, Chief Negotiator for the School Board, contacted the union during the debate over proceeding pursuant to section 447.4095, Florida Statutes (2008), in order to schedule a time to commence reopener negotiations. Mr. Tschappat purportedly informed the union that negotiations could proceed on two tracks. The parties agreed to pursue Interest Based Bargaining beginning on July 21, 2008, and contacted a federal mediator as required for that process.

. The School Board’s proposal was to amend the CBA to: (i) reduce the teacher work year from 198 days to 196 days; (ii) reduce paraprofessional salaries by one percent; and (iii) renumber the scheduled salary steps so that employees who were eligible for step increases would advance one step, even though the net effect of the change would actually not entail a step increase.

. Total savings from the changes were put at $3,603,115. The School Board indicated that if the union and superintendent subsequently reached an agreement with the necessary savings through the Interest Based Bargaining process, the decision would be revoked and the new agreement considered. The following day, Mr. Tschappat contacted the union about the possibility of resuming this process, but the union declined.

. Section 447.501(1), Florida Statutes (2008), provides in part:
(1) Public employers or their agents or representatives are prohibited from:
(a) Interfering with, restraining, or coercing public employees in the exercise of any rights guaranteed them under this part.
[[Image here]]
(c) Refusing to bargain collectively, failing to bargain collectively in good faith, or refusing to sign a final agreement agreed upon with the certified bargaining agent for the public employees in the bargaining unit.

.On July 21, 2008, the parties commenced Interest Based Bargaining negotiations pursuant to the reopener provision in the CBA. The parties met for several days and discussed methods to address the budget issues facing the School Board. A "quick fix” was proposed during these negotiations, but implementation would have required ratification by the bargaining units. The union requested the School Board forgo imposition of the section 447.4095 recommendations in order to allow the Interest Based Bargaining process to be completed.
The School Board, proceeded however, with the section 447.4095 process, apparently concerned that the bargaining units would not ratify the "quick fix” proposal, so that any resulting impasse would not be resolved before the beginning of the school year, with the result the pay increases under the CBA would go into effect, perhaps necessitating a retroactive salary reduction.

. In Florida State Lodge, Fraternal Order of Police, Ocala Local 129 v. City of Ocala, 24 F.P.E.R. 29335 (1998), the City and the union engaged in a reopener negotiating session in September 1997. During this session, the City did not propose any changes to the employees’ pay period. An amendment to the collective bargaining agreement was ratified on September 22 and 23, 1997. On September 24, 1997, the City sent a memorandum to all employees stating the City was changing their pay period from weekly to biweekly. The union sent a letter on October 9, 1997, protesting the change. On December 1, 1997, the union and City met to discuss the pay period change, with union representatives stating the meeting was to protest the change, and was not to be considered as a bargaining session or a demand to bargain. The City stated that the pay period change would proceed unless the union could provide some cost saving alternative. On January 1, 1998, the City changed the pay period to a biweekly schedule. The union then filed a grievance. Id. at 582.

. Int’l Union of Operating Eng’s v. Bd. of Cnty. Comm’rs of Jackson Cnty., 18 F.P.E.R. 23138 (1992), rev’d., 620 So.2d 1062 (Fla. 1st DCA 1993).