467 So.2d 1103 (1985)
Glenna SOMERO and Robert Somero, Her Husband, Appellants,
v.
HENDRY GENERAL HOSPITAL, Dr. James Forbes, Dr. Gordon Hayslip, Good Samaritan Hospital and Florida Patient's Compensation Fund, Appellees.
Nos. 82-1645, 82-1824 and 83-822.
District Court of Appeal of Florida, Fourth District.
May 1, 1985.
Montgomery, Lytal, Reiter, Denney & Searcy, P.A., West Palm Beach, Dale P. Redlich, Fort Lauderdale, Jerry I. Meyers, Pittsburgh, Pa., and Edna L. Caruso of Edna L. Caruso, P.A., West Palm Beach, for appellants.
Marjorie Gadarian Graham of Jones & Foster, P.A., West Palm Beach, for appellee Dr. Gordon Hayslip.

*1104 ON REHEARING
PER CURIAM.
We are asked to review an order dismissing appellants' action for failure to timely seek substitution of a deceased defendant's personal representative as a party in the case and an order denying a motion to set aside the order of dismissal.
In October 1979 Somero brought suit against Dr. Hayslip, Dr. Forbes, Hendry General Hospital, and Good Samaritan Hospital, for damages allegedly occurring from the negligent failure to diagnose a spinal injury. On December 22, 1981, Dr. Hayslip died and Dr. Hayslip's attorney (Flanagan) so advised Somero's attorney (Redlich). A suggestion of death was filed by attorney Flanagan on December 29, 1981. Additionally, in response to a request by Redlich, Flanagan inquired of the estate's lawyers for the name of the estate's personal representative, responding to Redlich on January 18, 1982, and attaching the estate's lawyers' response to Flanagan's inquiry. On May 28, 1982, Flanagan filed a motion to dismiss the complaint against Dr. Hayslip for failure to move for substitution within the ninety-day period required by rule 1.260(a)(1), Florida Rules of Civil Procedure. The motion was granted on July 2, 1982.
Plaintiffs thereafter filed a motion to set aside the order of dismissal under rule 1.540(b), Florida Rules of Civil Procedure. That motion came on for hearing in due course. The following summary of so much of those proceedings as appears relevant to a determination of the issue on appeal is extracted and paraphrased from the brief of appellee, Hayslip. At that hearing plaintiffs' Florida counsel, Redlich, testified that when he received Flanagan's letter of January 18, 1982, which merely enclosed a letter from the attorney for the estate, "the impression he had at that point was that they had a stipulation." He anticipated that substitution of the personal representative would be handled by stipulation; however, he never prepared one, nor did he ever ask Flanagan to sign one. He admitted he never called Flanagan and never asked whether they had a stipulation for substitution. He conceded that Flanagan never told him they had a stipulation. Indeed, he admitted that they never discussed a stipulation. He just assumed they had an agreement.
Redlich admitted that he never called the attorney for the estate and never asked whether Anna Hayslip had been appointed as personal representative. His "impression" was that Flanagan would tell him when the personal representative was appointed. He just "assumed" that Flanagan would tell him this. He said he "possibly" expected Flanagan to prepare a stipulation. Redlich denied that he had simply forgotten the matter, but admitted he had not made any diary notation.
The issue on appeal is whether the failure to move for substitution resulted from excusable neglect within the contemplation of rule 1.540(b), Florida Rules of Civil Procedure, and, if so, whether refusal to set aside the dismissal constituted an abuse of discretion.
It is axiomatic that Florida jurisprudence favors liberality in the area of setting aside defaults in order that parties may have their controversies decided on the merits. North Shore Hospital, Inc. v. Barber, 143 So.2d 849 (Fla. 1962). In the North Shore case the court also stated, however, that "a showing of gross abuse of a trial court's discretion is necessary on appeal to justify reversal of the lower court's ruling on a motion to vacate." Id. at 852 (emphasis deleted). For this proposition the court referred to precedent. In the first case cited, Coggin v. Barfield, 150 Fla. 551, 8 So.2d 9 (1942), the supreme court held that the test was gross abuse of discretion and reversed the trial court's entry of a default where a pleading was late for having been filed in the wrong court. The second case cited as authority was Coggin v. Morris, 150 Fla. 555, 8 So.2d 11 (1942), and that court simply reversed on the authority of the first case. We deem it significant that North Shore involved an order of the trial court setting *1105 aside a default rather than one refusing to do so.
Subsequent cases have rather consistently applied these principles. The court in Florida Aviation Academy, Dewkat Aviation, Inc. v. Charter Air Center, Inc., 449 So.2d 350 (Fla. 1st DCA 1984), reversed the trial court's refusal to set aside a default where the failure to timely file a pleading resulted from an inexperienced secretary's failure to properly calendar the time for response. The court recognized the tension between the policy of liberality in setting aside defaults and the requirement that a gross abuse of discretion be shown in order to reverse the trial court's action on a motion to vacate. It also indicated that the appellate courts have different approaches to the problem, concluding "[W]e prefer to follow that line of cases recognizing an avenue of relief is available to the defaulted party in those instances in which clerical or secretarial error has been demonstrated, and the presence of substantial prejudice to the opposing party is lacking." Id. at 353 (citation omitted).
Again in Broward County v. Perdue, 432 So.2d 742 (Fla. 4th DCA 1983), the trial court was reversed for refusing to set aside a default where the summons and complaint had inadvertently been clipped to the back of a file and replaced in the filing cabinet.
In Schmitz v. Ryan, 427 So.2d 1013 (Fla. 2d DCA 1983), a default based upon failure to make discovery was reversed upon a finding that the defaulted party, "a German citizen located in Germany," may not have been aware of his obligations to make discovery nor was it clear to what extent he "complied or was able to comply with those obligations; ... ." Id. at 1015.
See also Brandt v. Dolman, 421 So.2d 689 (Fla. 4th DCA 1982) (where corporate counsel filed answer for corporation but inadvertently failed to file a pleading for another individual defendant, trial court's refusal to set aside default would be reversed).
The cases cited to illustrate findings of excusable neglect are just that: illustrative, since more than one hundred cases involving the setting aside of defaults have been decided by Florida courts within a recent five-year period.
Representing the other side of the coin, the neglect in the following cases was found to have been inexcusable.
The fact that appellant was a fugitive from justice and that he consequently was unable to contact his attorney was held to be inexcusable neglect as a matter of law. DeLisi v. Bankers Insurance Co., 427 So.2d 363 (Fla. 4th DCA 1983).
Where a corporate president "thought" an attorney had responded to a complaint but subsequently received notice of plaintiff's intention to seek a default and still did not take any action in response to that notice, the trial court's order setting aside the default would be reversed. Abel, Tony & Aldo Creative Group, Inc. v. Friday Night Investors, Inc., 419 So.2d 1135 (Fla. 3d DCA 1982).
A mere allegation that failure to act resulted from excusable neglect without any factual basis being given is an insufficient basis for setting aside a default. Farmers Production Credit Ass'n v. Emperador Seafoods, Inc., 416 So.2d 889 (Fla. 4th DCA 1982).
Finally, a bare allegation that default resulted from misfiling or misplacing a complaint did not furnish a basis for reversal of the trial court's refusal to set aside a default where it also appeared that the default status had been called to the defendants' attention on several occasions. Bludworth v. Lally, 415 So.2d 164 (Fla. 4th DCA 1982), rev. denied, 427 So.2d 736 (Fla. 1983).
The pattern which emerges from these and the myriad of cases not cited here is best stated negatively: a default will not be set aside where the defaulted party or his attorney (1) simply forgot or (2) intentionally ignored the necessity to take appropriate action; that is to say, where the conduct could reasonably be characterized as partaking of gross negligence *1106 or as constituting a willful and intentional refusal to act. The failure to state any factual grounds upon which the movant relies has also been held to be an insufficient basis for setting aside a default.
We therefore conclude that, where inaction results from clerical or secretarial error, reasonable misunderstanding, a system gone awry or any other of the foibles to which human nature is heir, then upon timely application accompanied by a reasonable and credible explanation the matter should be permitted to be heard on the merits. It is a gross abuse of discretion for the trial court to rule otherwise.
We apply these principles here and reverse.
ANSTEAD, C.J., and HERSEY, J., concur.
LETTS, J., dissents with opinion.
LETTS, Judge, dissenting.
The final paragraph of the majority opinion expands the doctrine of excusable neglect to almost every conceivable form of negligence unless it is gross. I cannot believe that is the law.
It also conflicts with its own immediately preceding paragraph which indicates that "simply forgetting" is gross negligence and would not be excusable. The phrase "simply forgetting" simply cannot rise to the level of gross negligence and it must necessarily be included within the parameters of "any other of the foibles to which human nature is heir."
The majority has concluded here that a trial judge grossly abused her discretion for adhering to Florida Rule of Civil Procedure 1.260(a)(1) promulgated by the Supreme Court. I cannot go along with that.
A dissent is not the place for expanded discussion, but the Fourth District Court has turned the doctrine of excusable neglect every which way but loose.[1] As a consequence, what constitutes excusable neglect appears to turn on the particular panel's perception rather than any settled law. The problem with that, though I apparently have been guilty of it myself in the past, is that such appellate conduct ignores the discretion of the trial judge. See Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980). Ironically, that very discretion was cited by my esteemed, and now judicially departed, colleague, in an earlier version of this case, as his reason for affirmance.
As to settling the law on this subject, I would opt for this being an area where the discretion of the trial judge as to what constitutes excusable neglect should control except in the most aggravated circumstances. This is in fact what I believe the Supreme Court had in mind in North Shore Hospital, Inc. v. Barber, 143 So.2d 849 (Fla. 1962), when it opined that "gross" abuse was required to reverse a trial judge who found excusable neglect. I believe our decision here conflicts with North Shore Hospital, Inc. v. Barber. It also all but does away with default judgments.
NOTES
[1] See, for example, Westinghouse Credit Corporation v. Steven Lake Masonry, Inc., 356 So.2d 1329 (Fla. 4th DCA 1978) and compare it with County National Bank of North Miami Beach v. Sheridan, Inc., 403 So.2d 502 (Fla. 4th DCA 1981).