IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

EMERALD COAST UTILITIES
AUTHORITY,

CASE NO. 1D15-5714

     Appellant,

v.

BEAR MARCUS POINTE, LLC;
A FLORIDA LIMITED
LIABILITY COMPANY,

     Appellee.

_____/

Opinion filed October 6, 2017.

An appeal from the Circuit Court for Escambia County.
Gary L. Bergosh, Judge.

Bradley S. Odom and Richard D. Barlow of Odom & Barlow, P.A., Pensacola, for
Appellant.

Major B. Harding and Erik M. Figlio of Ausley & McMullen, Tallahassee; William
A. Fixel of Fixel & Willis, Tallahassee, for Appellee.


ON MOTION FOR REHEARING, REHEARING EN BANC, AND
CERTIFICATION OF QUESTION

PER CURIAM.

     Appellant's Amended Motion for Rehearing, Rehearing En Banc, and

Certification of Question is denied, but we withdraw our previous opinion and

substitute the following opinion in its place.

In this appeal from an order denying its motion for relief from judgment pursuant to Florida Rule of Civil Procedure 1.540(b), appellant claims that the trial court abused its discretion in not vacating and reentering its order assessing attorneys' fees, which appellant alleged to have never received, so that appellant could file a timely notice of appeal. Finding no abuse of discretion, we affirm.

On March 18, 2014, the trial court rendered an order assessing attorneys' fees against appellant in an eminent domain proceeding. On March 20, 2014, the clerk of the court served the order by email sent to the email addresses designated by counsel for each party. On May 12, 2014, appellant filed a motion for relief from the order, requesting the trial court to vacate and reenter the order to allow appellant to file a timely notice of appeal because appellant did not receive a copy of the order until after expiration of the time to appeal.

At the hearing on appellant's motion, Lendy Davis, the IT director for the clerk of the court, testified that the log from the clerk's e-service system indicated that emails containing the order were sent to the primary and secondary email addresses designated by appellant's attorneys at 7:28 p.m. on March 20, 2014. The clerk's email server contacted the email server for the domain of these addresses and handed off the messages to the recipient server. Davis explained that if the email had not been accepted by the recipient server, an error message would have been generated notifying the clerk's office that the email had not been delivered. The log

2

contained no such error message. Davis did not know what happened after the email was accepted by the recipient server.

William Hankins testified that he provided IT consulting services for appellant's counsel—the law firm of Odom & Barlow P.A.—beginning in 2007. In 2011, about two months after the firm installed its Microsoft Exchange server with a built-in email filtering system, the email filtering system was configured to drop and permanently delete emails perceived to be spam without alerting the recipient that the email was deleted. Hankins advised Richard Barlow that the firm's email system should not be configured to permanently drop and delete emails without alerting the recipient that the email was dropped because the built-in spam filtering on the server was very unreliable and created the risk of identifying and filtering legitimate emails as spam (false positives). Although Hankins believed that it was better to hire a third party that handled spam filtering on a full-time basis, Barlow rejected his recommendation to use a third-party vendor because he did not want to spend the extra money.

Hankins reviewed the transaction logs from the clerk's server to Odom & Barlow's server and concluded that the order assessing attorneys' fees was properly delivered to the Odom & Barlow server. Hankins opined that it was possible that the server deleted the email as spam.

3

In 2015, Hankins recommended that the firm get an online backup system that would have cost approximately $700 to $1200 a year. This recommendation was rejected. Eventually, Hankins stopped working for Odom & Barlow because the firm rejected his recommendations.

Stephen Reyes testified that he was a shareholder in the firm of Saltmarsh, Cleveland & Gund and managed the information system consulting arms of the firm. Reyes reviewed the email log printouts provided by the clerk's office and saw no evidence that the clerk's office made any mistake or was negligent in the service of the emails in question. He also reviewed five work stations and a server at the law firm of Odom & Barlow, did not find any of the emails, and did not find any evidence of destruction of the emails.

Reyes conceded that it was fairly unusual for a company to configure their system to not create any email logs and that if the server had been configured differently, he could have had complete logs from the period in question to determine whether the server had received the emails from the clerk's server. He also noted that the server was not configured to back up data or configuration files and that it was unusual for a business to operate a server system with absolutely no back up or disaster recovery process. If the server had backup data or configuration files, this would have provided information about additional emails and correspondence and changes in the email system itself. He suggested that a law firm that maintained

confidential and highly sensitive information for clients have a backup or disaster recovery process.

Reyes could not make a definitive determination whether the emails from the clerk's office were received by Odom & Barlow's server because the firm did not maintain logs or archive or backup emails. If he had complete logs, he would have been able to determine whether the emails had been received. However, Reyes acknowledged that the absence of any error messages, bounce-backs, or retries in the clerk's server logs made it more likely that the emails were received by Odom & Barlow's server. Moreover, if Odom & Barlow's server had received other emails from the clerk's server, this would indicate that there was effective communication between the two systems. Given the totality of the information he had, Reyes believed that it was more likely than not that the server received the emails.

James Todd testified that he helped design, implement, and support email systems. Todd explained that when sending an email, the sending server would look up the recipient server and establish a connection with the recipient server to make sure it was there and accepting messages. If there were no issues, the recipient server would send an "okay" message for the sending server to transmit the data. Once the data was received, the recipient server would send an "okay" message letting the sending server know that it got the data. This activity was referred to as

a "handshake," after which everything was under the control of the recipient. Todd testified that this was the equivalent of placing a piece of mail into a mailbox.

Todd reviewed the transaction logs from the clerk's server to Odom & Barlow's server and concluded that an email attaching an order assessing attorneys' fees was properly delivered to and received by the Odom & Barlow server on March 20, 2014, without any error messages or bounce-backs. According to Todd, after the handshake, an email went through any email filtering system that was in place. An email filtering system could be configured to delete emails perceived to be spam and to alert recipients of the receipt of email identified as spam. These settings were in the exclusive control of the email recipient. Thus, after a handshake occurred, the email could be filtered out as spam or delivered to the recipient.

Based on the information he reviewed, Todd concluded that the law firm of Odom & Barlow did not properly implement and utilize its email filtering system. It was his understanding that Odom & Barlow's email filtering system was set to drop and delete emails identified as spam. He did not recommend this setup to any business of any kind because it resulted in data loss. In fact, he testified that he would require the client to sign a waiver exonerating him from responsibility if the client insisted on implementing such an email filtering system.

Joe Fixel, lead counsel for appellee, testified that his firm filed a motion for attorneys' fees that was the subject of a hearing in January 2013. At the conclusion

6

of the hearing, the trial court asked the parties to submit proposed orders. The court did not enter its own orders until March 2014. While they were waiting for the court to act, Fixel's office had a protocol where an assigned paralegal would check the court's website every three weeks to see if the court had taken any action or entered any orders. Fixel also contacted opposing counsel, Richard Barlow, and suggested they file a joint motion for a case management conference to make sure the case had not slipped through the cracks. When Barlow categorically refused to join such a motion, he consulted with co-counsel who filed a motion for status conference. However, before the status conference occurred, the orders were received by email by all three attorneys and the paralegal who were assigned to the case at his firm. When the attorneys' fees award had not been paid within thirty days as ordered by the court, his paralegal contacted opposing counsel, whose office requested copies of the orders.

At the hearing, appellant argued that it was entitled to relief from the attorneys' fees order because it never received the order in time to file a timely appeal. Appellee responded that appellant was not entitled to relief because appellant's ability to file a timely appeal was not hindered by any action attributable to the trial court or the clerk, but was attributable to the actions of appellant's counsel. Afterwards, the trial court entered an order denying relief. This appeal followed.

Under Florida Rule of Civil Procedure 1.540(b), Florida courts have discretion to set aside a final judgment, decree, order, or proceeding based on "mistake, inadvertence, surprise or excusable neglect." Handel v. Nevel, 147 So. 3d 649, 651 (Fla. 3d DCA 2014). In Pompi v. City of Jacksonville, 872 So. 2d 931 (Fla. 1st DCA 2004), this court held that the appellants' failure to file a timely appeal constituted excusable neglect entitling appellants to relief from judgment under rule 1.540(b) where appellants' counsel made a mistake in reading the file stamp on the judgment, which was much less noticeable than the recording stamp. Id. at 933. While agreeing that the clerk bore no responsibility for counsel's error, this court noted "the fact that a deputy court clerk made precisely the same mistake when reporting the filing date on the telephone is at least some indication that counsel's error was excusable." Id.

Subsequently, in Hollifield v. Renew & Co., Inc., 18 So. 3d 616 (Fla. 1st DCA 2009), this court observed that the trial court had no authority to grant relief from judgment where the neglect in failing to take a timely appeal occurred entirely within the office of the party's counsel and no action attributable to the court or its personnel contributed to counsel's neglect to take a timely appeal. Id. at 617 (citing David M. Dresdner, M.D., P.A. v. Charter Oak Fire Ins. Co., 972 So. 2d 275, 280 (Fla. 2d DCA 2008)). In doing so, this court distinguished Pompi, "whose holding applied to cases

8

where the court or court staff substantially contributed to counsel's failure to file a timely notice of appeal." Id.

We agree with appellant that this language is dicta in light of the true holding in Hollifield that rule 1.540(b) did not authorize the trial court to grant relief from an interlocutory order. Id. However, because we conclude that appellant failed to demonstrate excusable neglect—or any other basis for relief under the rule—it is unnecessary to address whether rule 1.540(b) requires proof that some action attributable to the court or its personnel contributed to counsel's neglect to take a timely appeal.

"Excusable neglect is found 'where inaction results from clerical or secretarial error, reasonable misunderstanding, a system gone awry or any other of the foibles to which human nature is heir.'" Elliott v. Aurora Loan Servs., LLC, 31 So. 3d 304, 307 (Fla. 4th DCA 2010) (quoting Somero v. Hendry Gen. Hosp., 467 So. 2d 1103, 1106 (Fla. 4th DCA 1985)). However, "[t]he law requires certain diligence of those subject to it, and this diligence cannot be lightly excused." John Crescent, Inc. v. Schwartz, 382 So. 2d 383, 385 (Fla. 4th DCA 1980). "A conscious decision not to comply with the requirements of law cannot be 'excusable neglect' under the rule or any other equivalent requirement." Peterson v. Lake Surprise II Condo. Ass'n, 118 So. 3d 313 (Fla. 3d DCA 2013). Likewise, gross neglect is not excusable. Brivis Enters., Inc. v. Von Plinski, 8 So. 3d 1208, 1209 (Fla. 3d DCA 2009); Hornblower

9

v. Cobb, 932 So. 2d 402, 406 (Fla. 2d DCA 2006); Lehner v. Durso, 816 So. 2d 1171, 1173 (Fla. 4th DCA 2002); Otero v. Gov't Emps. Ins. Co., 606 So. 2d 443, 444 (Fla. 2d DCA 1992).

Although appellant claims that its counsel received no notice of the order assessing attorneys' fees until after expiration of the time to appeal, Lendy Davis, William Hankins, and James Todd testified that they reviewed emails logs from the clerk's server and concluded that the emails attaching the order assessing attorneys' fees were electronically served by the clerk's office on March 20, 2014, and received without error by Odom & Barlow's server. Although Stephen Reyes testified that he could not make a definitive determination whether the emails were received by Odom & Barlow's server because the firm maintained neither email logs nor archive or backup emails, he conceded that it was more likely than not that the server received the emails. Based on this evidence, the trial court could conclude that the order assessing attorneys' fees was received by Odom & Barlow's server, which was the equivalent of placing a physical copy of the order in a mailbox.

In addition, testimony was presented that the spam filter of Odom & Barlow's server was deliberately configured in such a way that it could delete legitimate emails as spam without notifying the recipient, despite Odom & Barlow being warned against this configuration. Specifically, William Hankins advised against this configuration because the built-in spam filtering on the server was very

10

unreliable and created the risk of identifying and filtering legitimate emails as spam. Hankins also recommended that Odom & Barlow hire a third party to handle spam filtering on a full-time basis and purchase an online backup system. However, these recommendations were rejected because the firm did not want to spend the additional money. Stephen Reyes noted that the server had the ability to generate email logs, but was specifically configured not to create logs in order to save drive space.

Based on this testimony, the trial court could conclude that Odom & Barlow made a conscious decision to use a defective email system without any safeguards or oversight in order to save money. Such a decision cannot constitute excusable neglect. See Onwuchekwe v. Okeke, 404 F. App'x 911, 912 (5th Cir. 2010) ("Even if the district court credited the claim that email settings deflected the notice away from counsel's inbox, it was not an abuse of discretion to conclude that sending court communications to the spam folder is inexcusable neglect."); Crocker v. Child Dev. Sch., Inc., No. 3:10-CV-759-WKW, 2011 WL 4501560, at \*5 (M.D. Ala. Sept. 29, 2011) ("Mr. Wiley's evidence on the cause for the delay is the digital age equivalent of 'the dog ate my homework.' Mr. Wiley claims that e-mail difficulties prevented discovery of C.D.S.'s pending motion, but this evidence demonstrates that these difficulties were entirely self-created. . . . An inability to manage an office e-mail system to properly receive notices of filing does not qualify as excusable neglect."); Bequer v. Nat'l City Bank, 46 So. 3d 1199 (Fla. 4th DCA 2010)

11

(reversing an order setting aside a default final judgment based on excusable neglect where the bank's inaction was not the result of a "system gone awry," but rather of a "defective system altogether").

Finally, testimony was presented that opposing counsel, Joe Fixel, had a protocol where an assigned paralegal would check the court's website every three weeks to see if the court had taken any action or entered any orders. If Odom & Barlow had a similar procedure in place, the firm would have received notice of the order assessing attorneys' fees in time to appeal. The neglect of Odom & Barlow's duty to actively check the court's electronic docket was not excusable where the parties knew that the trial court would be issuing a final order subject to appeal within jurisdictional time limits. See Yeschick v. Mineta, 675 F.3d 622, 629-30 (6th Cir. 2012) (holding that counsel's neglect in not checking the docket was not excusable because the parties had an affirmative duty to monitor the docket to keep apprised of the entry of orders that they may wish to appeal); Robinson v. Wix Filtration Corp. LLC, 599 F.3d 403, 413 (4th Cir. 2010) (holding that counsel's computer problems did not constitute excusable neglect where counsel failed to actively monitor the court's docket or find some other means by which to stay informed of docket activity); PNC Bank, Nat'l Ass'n v. Lucmaur, LLC, No. 6:14-cv-238-Orl-37KRS, 2015 WL 1020604, at *2 (M.D. Fla. Mar. 9, 2015) (denying defendants' motion to vacate an order based on "mistake, inadvertence and/or

12

excusable neglect" because counsel's e-mail service flagged and filtered the court's "Notice of Electronic Filing" as spam, noting that if defendants or their counsel had checked the docket they would have seen at least one potentially case-dispositive motion pending and would have known that failure to timely respond might result in the court granting the motion unopposed); Pinks v. M & T Bank Corp., No. 13 Civ. 1730(LAK), 2014 WL 2608084, at *1 (S.D.N.Y. June 5, 2014) ("The fact is that all sorts of things go awry in the electronic universe in which we now live, and lawyers are obliged to protect their clients' interests even if that requires something more than blind reliance on the proper and timely transmission, receipt and filing of computer generated electronic mail. Thus, even if one were to characterize as excusable the error attributed to the IT staff, the lawyer's failure to check the docket sheet, knowing that he had a motion pending before the magistrate judge and that an adverse recommendation would have to be objected to within fourteen days of its entry, was not."); Moncier v. Jones, 939 F.Supp.2d 854, 862 (M.D. Tenn. 2013) (concluding that "Plaintiff's failure to respond to the motion to dismiss as a result of his computer difficulties does not constitute excusable neglect" where "Plaintiff should have expected the filing of an answer or motion to dismiss by the Defendants and owed an affirmative duty to check the court's docket to remain informed about this action").

Counsel has a duty to have sufficient procedures and protocols in place to ensure timely notice of appealable orders. This includes use of an email spam filter with adequate safeguards and independent monitoring of the court's electronic docket. In cases where rendition of an appealable order has been delayed for a significant period of time, it might also include the filing of a joint motion for a case management conference to ensure that the order has not slipped through the cracks. Odom & Barlow made no effort to do any of these things, reflecting an overall pattern of inaction and disengagement. In short, there was an absence of "any meaningful procedure in place that, if followed, would have avoided the unfortunate events that resulted in a significant judgment against" appellant. Hornblower, 932 So. 2d at 406. Accordingly, the trial court did not abuse its discretion in denying appellant's rule 1.540(b) motion.

AFFIRMED.

MAKAR, JAY, and M.K. THOMAS, JJ., CONCUR.