DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ALONZIE WIGGINS,**
Appellant,

v.

**BRIGHTVIEW LANDSCAPE SERVICES, INC.,** f/k/a
**VALLEYCREST LANDSCAPE MAINTENANCE,** d/b/a
**VALLEYCREST TREE CARE SERVICE,**
Appellee.

No. 4D21-1886

[March 16, 2022]

Appeal and cross-appeal of a nonfinal order from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Michele Towbin Singer, Judge; L.T. Case No. 17-021790 CACE (08).

David H. Charlip of the Charlip Law Group, LC, Miami, for appellant.

David L. Luck and Todd R. Ehrenreich of Lewis Brisbois Bisgaard & Smith LLP, Coral Gables, for appellee.

CIKLIN, J.

Alonzie Wiggins ("Wiggins") sued his former employer, Brightview Landscape Services, Inc. ("Brightview"), for negligence stemming from a 2015 workplace injury. Despite proper service of the complaint, Brightview did not appear in the matter and the clerk entered a clerk's default. The trial court conducted a jury trial on damages and a jury returned a $2.5 million verdict in Wiggins' favor. Neither Brightview nor its counsel attended the trial. The parties appeal and cross-appeal an order on Brightview's motion for relief from judgment, which order effectively denies Brightview's motion to vacate the default but grants its motion to vacate the final judgment. Because we must find the trial court erred by denying the motion to vacate the default, we reverse and remand for a new trial on both liability and damages.

*Background*

After Wiggins' injuries, he sought damages from two companies, Personal Staffing d/b/a Barnett (Barnett) and Brightview. Barnett is a labor staffing company that provided temporary laborers to Brightview pursuant to a service agreement. The agreement required Barnett to maintain workers' compensation, employer's liability, and general liability insurance coverages and to name Brightview as an additional employer insured under the policies.

Barnett provided Wiggins to Brightview as one such temporary worker. After Wiggins' injuries, he filed a workers' compensation claim with Barnett that resolved in 2015. In 2017, Wiggins sued Brightview, alleging that it negligently supervised its temporary laborers and knowingly provided him with malfunctioning equipment that caused his injuries. The default and trial followed.[1]

Pursuant to Florida Rules of Civil Procedure 1.440(c) and 1.540(b)(1), Brightview moved for relief from the final judgment, arguing it did not receive proper notice of trial, and for relief from the default, alleging "excusable neglect" for failing to defend the action and asserting a "meritorious defense." Brightview attached a sworn declaration from its claims manager. Brightview explained that no defense was mounted "because of the mistaken, but reasonable belief that this dispute had already been resolved through Plaintiff's workers' compensation claim" with Barnett, the staffing company.

Brightview explained further that, when its office first received Wiggins' worker's compensation claim in 2015, an electronic file was both created and coded accordingly. Due to "clerical and systems errors" in the office, Wiggins' subsequent personal injury action remained coded as the same worker's compensation matter—which at that point had already been marked closed and paid. Consequently, a defense was never permitted or undertaken as to Wiggins' personal injury lawsuit, and the matter did not come to Brightview's attention until well after the fact when Wiggins sought to collect on the judgment.

Brightview explained that, because all filings were electronic, once the initial electronic coding mistake was made in 2015, Brightview would have had no reason to look at or review any subsequent filings. In other words, no human eyes ever looked at the filings.

---

[1] Thereafter, and during the pendency of the rule 1.540 proceedings, Brightview filed a third-party claim against Barnett for indemnification based on terms within their service agreement.

The trial court vacated the final judgment, properly concluding that Brightview was not given notice of the trial as required by rule 1.440(c). *See Fain v. Spivey*, 324 So. 3d 519, 520 (Fla. 4th DCA 2021); *Williams v. Skylink Jets, Inc.*, 229 So. 3d 1275, 1278 (Fla. 4th DCA 2017). We affirm this portion of the order on appeal.

However, the trial court denied the motion insofar as it sought to vacate the earlier default, rejecting Brightview's characterization of its conduct as "excusable neglect," and instead viewing it as "gross negligence" because of Brightview's "intentional act" of not looking at the multiple filings during the duration of the litigation. The trial court noted at least eight instances where a notice or document was sent to Brightview's registered agent before the default and judgment were entered. The court believed that these specific filings should have "raised eyebrows" to take a closer look at the case. It found this case similar to *Emerald Coast Utilities Authority v. Bear Marcus Pointe, LLC*, 227 So. 3d 752 (Fla. 1st DCA 2017). On this point, we reverse.

## *Analysis*

"In order to set aside a default, a defendant must show that the default [1] resulted from excusable neglect; [2] that the defendant had a meritorious defense; and [3] that the defendant used due diligence in seeking relief from the default." *Quest Diagnostics, Inc. v. Haynie*, 320 So. 3d 171, 174 (Fla. 4th DCA 2021). This case solely concerns the first of the three factors.

In *Emerald Coast*, the case upon which the trial court relied for its holding, a law firm moved to vacate and reenter an order to allow its client to appeal, alleging that it did not receive a copy of the order until the time for appeal expired. 227 So. 3d at 753. The First District affirmed the trial court's denial of that motion, pointing to testimony that the firm *knew* its spam filter was configured in such a way that it could delete legitimate emails as spam without notifying the recipient. *Id.* at 757. Further testimony supported a conclusion that despite knowing about this configuration, the firm "made a conscious decision to use a defective email system without any safeguards or oversight in order to save money." *Id.* The appellate court recognized that such a decision cannot constitute excusable neglect because "[t]he law requires certain diligence of those subject to it, and this diligence cannot be lightly excused." *Id.* at 756 (alteration in original) (quoting *John Crescent, Inc. v. Schwartz*, 382 So. 2d 383, 385 (Fla. 4th DCA 1980)); *see also Bequer v. Nat'l City Bank*, 46 So. 3d 1199, 1202 (Fla. 4th DCA 2010) ("Missing the complaint and the

correspondence on three different occasions is not evidence of a 'system gone awry' but rather a defective system altogether.").

We agree with Brightview that the case at bar is more similar to those where excusable neglect arose from the existence of multiple lawsuits, resulting in mis-filings and confusion, such that no "human" saw the filings from 2017-2019. *See, e.g., Shurgard Storage Ctrs., Inc. v. Parker*, 755 So. 2d 695, 696 (Fla. 4th DCA 1999) (holding that "administrative mishandling and misrouting of the complaint between corporate offices" was "a clear case of excusable neglect as a result of a system gone awry"); *Okeechobee Imps., Inc. v. Am. Sav. & Loan Ass'n of Fla.*, 558 So. 2d 506, 507 (Fla. 3d DCA 1990) (reversing order denying motion to set aside default and final judgment where complaint was forwarded to an automobile dealership's business office and placed in a non-litigation "Deal" file related to the same automobile); *Zwickel v. KLC, Inc.*, 464 So. 2d 1280, 1280-81 (Fla. 3d DCA 1985) (reversing where the attorney's affidavit explained reasonable confusion over the interrelationship between two cases involving substantially the same parties and transaction).

Because of the initial error set in motion by the computer coding error, Brightview did not intentionally ignore subsequent filings. Also, nothing before the trial court indicated this was a recurring problem that Brightview knew or should have known about, unlike in *Emerald Coast*, and its cited cases, which involved "blind reliance" on computer systems *despite known flaws*. 227 So. 3d at 757-58.

As we recently explained in *Quest Diagnostics*, while an appellate court reviews the denial of a motion to vacate under the abuse of discretion standard of review, courts prefer to decide cases on the merits of the claim rather than on a technicality. 320 So. 3d at 174. Further, if there is any reasonable doubt in the matter of vacating a default, it should be resolved in favor of granting the motion. *Id.* at 175 (citation omitted).

We conclude that Brightview satisfied its burden of demonstrating excusable neglect. Therefore, we reverse the order denying the motion to vacate the default, and we remand for further proceedings on the merits.

*Affirmed in part, reversed in part, and remanded.*

KUNTZ, J., concurs.
WARNER, J., concurs in part and dissents in part with opinion.

WARNER, J., concurring in part and dissenting in part.

4

I agree with the majority's affirmance of the trial court's vacation of the final judgment, as it concluded that Brightview was not given notice of trial as required by the rules. I disagree, however, to an outright reversal of the default. I would remand for an evidentiary hearing on whether *excusable* neglect has been shown.

The majority seems to believe that somehow the summons and subsequent pleadings were received by Brightview and were coded automatically, without human intervention, leading to the conclusion that this amounted to excusable neglect as a matter of law. But the affidavit from the Brightview representative does not state that no human eyes saw these documents. Indeed, some person must have placed the code in the document being received. The representative states:

> When my office first received notice of Mr. Wiggins' workers' compensation claim in September 2015, an electronic file was created here. That file coded the cases as workers' compensation matter.
>
> Due to clerical and systems errors in my office, Mr. Wiggins' subsequent personal-injury action filed in this Court remained coded as the same workers' compensation matter, which, by that point, had already been marked closed and paid. As a result of these errors, a defense was never undertaken of Mr. Wiggins' personal-injury lawsuit.

In the hearing on the motion to vacate, Wiggins' attorney identified several other instances where a notice or document was sent to Brightview's registered agent "CT Corp," including the Clerk's default. These were forwarded and apparently continued to be coded into the worker's compensation file. As the trial court said, that should have "raised eyebrows" to take a closer look at "what's going on here, this case is closed, why am I getting a notice of default by the clerk's office." Instead, Brightview did nothing.

Brightview argued to the trial court that "[t]he reason that the system exists and the reason this occurred is it's an electronic file. There isn't someone putting eyes on it, as your Honor is envisioning, and going through and saying, 'hey this is on a closed case, we need to do something, guys.'" Brightview contended that once the initial coding mistake was made, it would have no reason go look at or review any subsequent filings.

The trial court questioned Brightview's system and the fact that receipt of multiple post-workers' compensation filings did not raise any eyebrows.

The court clearly did not agree that Brightview's conduct amounted to excusable neglect. It stated:

> [T]his was an intentional act of Brightview that when – you're telling me when there's a workman's comp case, that they're not responsible for any filings regarding the parties, they don't even look at it and they just automatically put it into the workman's comp file, whether it's open or closed. And I find that to be gross, gross neglect, gross negligence. And that—
>
> In this case if it had been one filing, fine; but it was multiple filings. Not just a complaint, but a notice of default and then an actual default against Brightview. I find it gross negligence for there to be a system in place that doesn't actually take a look at the filings.
>
> This to me is also similar to the case cited by the plaintiff where the law firm had this email system that erased what it considered to be spam, which, unfortunately, included notices from the clerk's office. And they said, you know, that's gross neglect.

When Brightview persisted, the trial court added that it would have agreed had Brightview mislaid one filing, but "filing after filing after filing that it receives, it just ignores it[;] at some point maybe they should take a look at what's being filed."

Wiggins requested an evidentiary hearing to resolve the issue, but the trial court denied the motion to vacate the default. I agree that an evidentiary hearing is necessary to decide the issue.

I find this case to be most like *Emerald Coast Utilities Authority v. Bear Marcus Pointe, LLC*, 227 So. 3d 752 (Fla. 1st DCA 2017), in which the appellate court upheld the denial of a motion to vacate an attorney's fee award for lack of notice. The appellants claimed they did not receive the email notice. But through an *evidentiary hearing*, it was shown that the configuration of the email server to which the notice of the hearing was sent increased the risk that the server's spam filter would reject legitimate emails. This was a known cost-savings decision. The appellate court agreed that this constituted a conscious decision to use a defective mail system and affirmed the denial of the motion to vacate the award. *Id.* at 757.

6

Similarly, in this case an evidentiary hearing could delve into the configuration of the coding system and whether human eyes saw the documents as they were coded when received. If so, then the deluge of documents received on a closed file should have generated some flagging of the file for a supervisor to review. The court, even without an evidentiary hearing, found the system to be so deficient as to be grossly negligent.

I do not find this to be a case where the movant's supporting affidavit clearly demonstrates excusable neglect as in *Okeechobee Imports, Inc. v. American Savings & Loan Association of Florida*, 558 So. 2d 506, 507 (Fla. 3d DCA 1990) and *Zwickel v. KLC, Inc.*, 464 So. 2d 1280 (Fla. 3d DCA 1985).

In *Okeechobee Imports*, the appellate court reversed an order denying relief from a default judgment in a breach of contract case, because the summons and complaint were improperly placed in a "Deal" file regarding the automobile, which was involved in other pending litigation aside from the "deal." The affidavit explained the mistake and that it was contrary to established corporate procedures in processing a complaint. *Id.* at 507. In reversing, the Third District concluded that, "a failure to timely respond in an action should be considered excusable where it is due to confusion which reasonably exists as a result of the pendency of two or more cases involving the same or related parties or subject matters." *Id.* at 507.

In the present case, however, the workers' compensation matter was closed. Thus, the new summons and all subsequent received documents were apparently coded into a closed file.

In *Zwickel*, when reversing the trial court's denial of a motion to vacate, the appellate court reasoned that the attorney's affidavit explained the reasonable confusion over the interrelationship between two pending cases involving substantially the same parties and transaction. 464 So. 2d at 1280–81. The appellate court noted further that the case numbers had been used together by both the opposing party and the trial court in proceedings in the companion case. *Id.* at 1281. Here, however, the workers compensation case was closed. There should not have been confusion between a closed case and a new case.

Notably, in both *Okeechobee Imports* and *Zwickel*, the movants sought relief within days after the default and default judgment. Contrast that to the present case, where Brightview continued to receive filings and improperly coded them into a closed file for almost *two years.* Under such circumstances, I cannot find that on this record it would be an abuse of discretion to deny the motion to vacate.

Whether the improper coding and conscious disregard for the pleadings received constitutes gross negligence or excusable neglect appears to me to require an evidentiary hearing to resolve how Brightview actually received and coded these documents, and how it continued to code pleadings into a closed file for such a length of time. Thus, I would reverse for an evidentiary hearing on the motion to vacate.

*       *       *

***Not final until disposition of timely filed motion for rehearing.***