# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2024-0196
_____

MICHAEL T. HANNIFORD and
W. BECKY HANNIFORD,

    Appellants,

    v.

UNITED SERVICES AUTOMOBILE
ASSOCIATION,

    Appellee.

_____

On appeal from the Circuit Court for Santa Rosa County.
J. Scott Duncan, Judge.

July 30, 2025

KELSEY, J.

    This case raises an excusable-neglect issue. The plaintiffs below, homeowners Michael and Becky Hanniford, lost their chance to litigate in circuit court because their law firm missed a deadline. While we recognize and regret how their lawyers' inaction impacted them negatively, we conclude the trial court correctly denied the requested judicial relief on the facts presented.

# I.

After Hurricane Sally damaged their Gulf Breeze home in 2020, the homeowners got a public adjustor's estimate of over $317,000 for repairs. Their insurer, USAA, denied benefits because the cost of repairing the roof was less than the policy deductible, and interior and contents damages allegedly were not reported timely.

The homeowners retained Morgan Law Group to represent them. During the relevant period, three different lawyers with the firm handled the case. First, attorney John Lanpher filed a first-party lawsuit against USAA. The trial court issued a standard set-up order requiring the parties to comply with local circuit rules, including those governing the court's electronic service and filing system. Over the course of the litigation, both parties, and the trial court, filed documents reflecting use of the e-portal. However, there is no record that the law firm ever updated the portal or filed new designations when the responsible attorney changed, until after entry of the order on appeal.

Mr. Lanpher filed an amended complaint, and handled discovery and litigation for about a year. Both the original and amended complaints listed Mr. Lanpher's direct e-mail with the firm, as well as a separate electronic-service e-mail for the firm. Some other documents to and from Mr. Lanpher used only his direct e-mail address and not the firm's e-service address. Mr. Lanpher became of counsel to the firm in September of 2022.

A second attorney with the firm, Matthew Funderburk, took over the representation, but there is no evidence that he filed a notice of appearance or designation of his e-mail address. Again, the record does not reveal whether or how he or anyone else at the firm updated the e-filing portal. As before, some documents contained both his own e-mail address and the firm's e-service e-mail address, and others only his direct e-mail. He attended non-binding arbitration with the homeowners.

On June 27, 2023, the arbitrator delivered the "Findings and Award" document through the e-portal, prominently stating "Delivery Via Florida Courts E-Filing Portal" in an all-caps, bold,

underlined text heading on the first page. The arbitrator also directly e-mailed the award to Mr. Funderburk at his direct law-firm e-mail address. The document expressly advised the homeowners that they were under a deadline to move for a trial if they did not want to accept the award amount, citing the governing rule. *See* Fla. R. Civ. P. 1.820(h) (setting twenty-day deadline). Therefore, the deadline to move for a trial was July 17, a Monday. The document also expressly advised the parties that issues about interior damage to the home would be "best decided by a Judge on the appropriate dispositive motion or a jury via a trial on the merits."

Starting June 29—with 18 days to go before a motion for trial had to be filed—USAA's lawyer (even though she herself was new to the case) initiated communications with both of the Hannifords' lawyers of record, Mr. Lanpher and Mr. Funderburk. She e-mailed Mr. Funderburk first, on June 29, using his direct e-mail address. She told him she had tried to call him, but his voicemail-box was full. She *referenced the arbitration award in her email*, and asked if they could talk. He did not respond. She e-mailed him again on July 6, attaching her first e-mail, and asking if he was the correct attorney to contact. He did not respond.

Likewise unfruitful were the USAA lawyer's attempts to contact Mr. Lanpher—who had signed the complaint, handled the case for about a year, and was still with the firm as "of counsel," though that change apparently was not communicated to opposing counsel or the trial court or updated in the portal. She e-mailed Mr. Lanpher at his direct e-mail address on July 10. She attached her two previous messages to Mr. Funderburk, including the first one expressly referencing the arbitration award. She told Mr. Lanpher she had left him a voicemail, and asked which attorney was handling the case. She got no response, and e-mailed him again on July 10, again attaching her earlier e-mails including the one referencing the arbitration award. She said she had left him another voicemail, and again inquired who was in charge of the case. Mr. Lanpher responded as follows, also on July 10:

> [H]e [Mr. Funderburk] has been the handling attorney but there may be a change soon as he's leaving the firm soon. I'm going to try to reach him for you, but in the

3

meantime if there's something you want to get done on this one let me know and I'll look into it.

Mr. Lanpher did not get back to the USAA lawyer. As the trial court later noted in the order granting USAA's motion for final judgment and denying the homeowners' motion to vacate, Mr. Lanpher's e-mails used the firm's logo, listed him as an "Attorney," and did not limit or qualify his status or authority in any way. Once again, nothing was filed with the trial court about the change in Morgan Law Group lawyers upon Mr. Funderburk's departure, and there is no evidence the portal was updated.

The record does not establish how long the firm knew that Mr. Funderburk would be leaving—though that is a relevant question. His last day with the firm was July 14, a Friday. The deadline to move for a trial was Monday, July 17. Nevertheless, the homeowners' law firm did not file or serve a timely motion for trial. On July 18, the USAA lawyer emailed Mr. Lanpher again, referencing the arbitration award, and requesting to resolve the question of fees. On July 19, USAA filed a motion for entry of final judgment, and cancelled a pending deposition, serving both documents on Mr. Lanpher at his direct law-firm e-mail address. We have no information about whose e-mail address the Morgan Law Group had designated on the e-filing portal at that time.

On July 27, a third attorney with the same law firm, Steven Johnson, e-filed a motion to vacate the arbitration award. As far as our record reveals, he did not file a notice of appearance or designation of e-mail addresses to update the e-filing portal. He served his motion to vacate on the *previous* USAA attorney, although the new lawyer for USAA had filed a notice of appearance and had directly e-mailed both attorneys Lanpher and Funderburk. This motion sought relief from excusable neglect, referring for details to Mr. Johnson's brief supporting affidavit, which asserted as follows:

> The attorney previously assigned to this case by the firm and who handled the arbitration [Mr. Funderburk] is no longer with the firm. That attorney's last day of work was July 14, 2023. . . . No assignments, notes or other information was left behind by the departing attorney to

4

notify the firm of the critical deadline or the client's wishes. In addition, the deadline to file was not calendared at all at this firm.

This firm has an entire procedure and system through the service emails where everything is calendared and accounted for as a matter of standard law firm procedures. Through excusable neglect, inadvertence or mistake the deadline was not calendared.

The affidavit did not elaborate on what "procedure and system" the firm used or whether it consisted solely of human action or also involved technology; did not identify by name, title, or function any clerical personnel involved in calendaring and what any such person did wrong; did not identify any technology or equipment failures; did not state how long the firm knew Mr. Funderburk would be leaving or what steps the firm took to protect clients whose matters he was handling; and did not explain what went wrong in the process—only the end result, that the deadline was not calendared. The firm never provided any affidavit or testimony from Mr. Funderburk himself.

The video-conference hearing was not transcribed. Afterward, the trial court entered an order rejecting the law firm's excusable-neglect arguments. The court noted that USAA's lawyer had tried to "contact the departing attorney [Mr. Funderburk] on multiple occasions in late June and early July before his departure date." The court also noted that Mr. Lanpher, still of counsel with the firm, had signed the complaint, received communications from USAA's post-arbitration lawyer by phone and e-mail, responded to tell her about the change of attorneys, and promised to get back to her, but did not. And the firm failed to timely file a motion for trial.

The trial court order acknowledged that under certain circumstances, an attorney's failure to act can entitle the affected client to judicial relief under a theory of excusable neglect. The court found that excusable neglect did not exist on these facts, and granted USAA's motion for entry of final judgment, reasoning as follows:

5

[T]he facts in this case do not amount to excusable neglect. The failure to file a Motion for Trial was not a clerical error or secretarial error. It was the failure of the departing attorney to act before an important deadline. The departing attorney received communication from opposing counsel regarding the arbitrator's decision and never responded. Additionally, the attorney who signed the initial Complaint was still employed by the law firm, knew the other attorney was leaving, and still did not file anything before the deadline. This, also, is not a reasonable misunderstanding or a system gone awry. Two attorneys with the law firm simply chose inaction and chose to ignore communications from opposing counsel. Based on the totality of circumstances, the Court finds excusable neglect does not exist in this specific case.

The trial court entered a final judgment in the amount of the arbitration award, which was recorded on December 19, 2023. On January 3, 2024, the homeowners filed a motion for rehearing or to set aside the court's judgment based on excusable neglect. While the motion was still pending, they filed their notice of appeal. We held the appeal in abeyance pending disposition of the homeowners' January 3 motion.

In the motion for rehearing or to set aside, the firm admitted that Mr. Funderburk failed to calendar the deadline for the trial motion, and admitted that the firm's "system for transitioning matters from one responsible attorney to another" had broken down, resulting in the firm's failure to file a timely motion for trial. The motion and affidavit did not otherwise elaborate on what the "system" was, what steps would ordinarily have been taken to monitor the court docket or calendar deadlines, whose responsibility it was to calendar deadlines, what that person or persons had done wrong, or whether there was an equipment or technology failure. There was again no supporting affidavit from Mr. Funderburk, nor from any clerical or technology staff with the firm.

The firm's motion first blamed the USAA attorney for moving for entry of final judgment rather than going along with the firm's after-the-fact attempt to circumvent the missed deadline. The firm

also argued that the new USAA lawyer's e-mails did not constitute actual "contact," but at best attempted contact; and that the e-mails did not provide actual notice of the arbitration award.[1] The firm did not address the fact that the e-mails included and forwarded the original one in which the USAA lawyer expressly stated she was reaching out about the arbitration award.

The motion then blamed the arbitrator for not including the firm's e-service address in the award document's certificate of service. But the motion did not address the fact that the award document clearly stated it was served using the court's e-filing portal, did not address whether the firm had updated the service list on the portal as it was obligated to do throughout the proceedings, and did not address whether the responsible attorney or any staff member ever checked the court docket.

The firm's motion relied on a new affidavit in which Mr. Lanpher disclaimed any personal responsibility for the case after he became of counsel to the firm in 2022. He attested that he did not receive the arbitration award from the arbitrator, that the firm's calendaring system "depends on service to the correct email address," and that e-mails to individual attorneys' direct e-mail addresses "are not captured by the firm's calendaring system." Mr. Lanpher relied on his own personal lack of knowledge, although the record reflects that he did receive the USAA lawyer's e-mail outreach (which forwarded her original e-mail expressly referencing the arbitration award), e-mailed the lawyer back, and promised to look into it. The record does not reflect, and the firm

---

[1] Although the firm argues that the USAA lawyer's e-mails were not properly authenticated at the hearing, the firm does not deny their authenticity, and has failed to provide a transcript of that hearing (or the subsequent one) to support that claim or any other. *See Applegate v. Barnett Bank of Tallahassee*, 377 So. 2d 1150, 1152 (Fla. 1979) (noting lack of a transcript makes it difficult for the appellate court "to conclude that the trial court's judgment is not supported by the evidence or by an alternative theory"). Without a transcript to prove to the contrary, all potentially relevant factual issues not unequivocally resolved on the face of the existing record are presumed to favor the trial court's ruling.

does not claim, that Mr. Lanpher—or anyone else—checked the firm's files or the court docket.

The trial court denied the motion on March 25, 2024, and we ended the period of abatement so the appeal could proceed. *See* Fla. R. App. P. 9.020(h)(2)(C). The homeowners now address the denial of their motion to set aside the judgment as well as the final judgment itself.[2]

## II.

Turning to the merits, we affirm the final judgment. We hold that the trial court correctly rejected the excusable-neglect defense and entered judgment on the arbitration award after the homeowners' counsel failed to timely request a trial de novo. *See Gambrel v. Sampson*, 330 So. 3d 114, 116–17 (Fla. 2d DCA 2021) (holding this is a "mandatory" and "ministerial act with no room for discretion") (quoting *Citizens Prop. Ins. Corp. v. Trapeo*, 136 So. 3d 670, 679 (Fla. 2d DCA 2014)).

Our standard of review is abuse of discretion. *State, Dep't of Transp. v. Southtrust Bank*, 886 So. 2d 393, 396 (Fla. 1st DCA 2004). "[C]ourts are much more inclined to find excusable neglect when the error occurs [] due to a breakdown in the mechanical or operational practices or procedures of the attorney's office equipment or staff." *Id.* (quoting *Carter v. Lake Cnty.*, 840 So. 2d 1153, 1158 n.6 (Fla. 5th DCA 2003)).

The existence of excusable neglect is inherently fact-intensive, and there is no single controlling legal definition of it—making it extremely difficult to demonstrate a reversible abuse of discretion. Courts frequently describe it as existing "where inaction results from clerical or secretarial error, reasonable misunderstanding, a

---

[2] USAA argues that the homeowners are precluded from arguing that the trial court incorrectly denied their post-judgment motion for rehearing or to set aside, because they did not file a second notice of appeal directed to that ruling. Because we conclude the post-judgment motion arguments and affidavit do not change the outcome, we decline to address this issue.

system gone awry or any other of the foibles to which human nature is heir." *Quest Diagnostics, Inc. v. Haynie*, 320 So. 3d 171, 175 (Fla. 4th DCA 2021) (quoting *Somero v. Hendry Gen. Hosp.*, 467 So. 2d 1103, 1106 (Fla. 4th DCA 1985)). It merits mention that *Quest* itself—a leading case in excusable-neglect cases—pointedly relied on an earlier case distinguishing between mere clerical or secretarial error on the one hand, and attorney misfeasance or malfeasance on the other hand:

> The pattern which emerges from these and the myriad of cases not cited here is best stated negatively: a default will not be set aside where the defaulted party or his attorney (1) simply forgot or (2) intentionally ignored the necessity to take appropriate action; that is to say, where the conduct could reasonably be characterized as partaking of gross negligence or as constituting a willful and intentional refusal to act.

*Somero,* 467 So. 2d at 1105–06.

Consistent with the distinction noted in *Somero*, cases involving clerical errors or technological failures beyond an attorney's control have more often produced a finding of excusable neglect than have mistakes, oversights, or intentional inaction within an attorney's control. *See, e.g., Housen v. Universal Prop. & Cas. Ins. Co.*, 401 So. 3d 369, 370–71 (Fla. 4th DCA 2025) (finding excusable neglect where legal secretary averred she failed to calendar trial de novo deadline); *Polymer Extrusion Tech. Inc. v. Glasshape Mfg., Ltd.*, 374 So. 3d 34, 37–39 (Fla. 4th DCA 2023) (detailing reasonable belief of new legal assistant that former assistant had calendared de novo trial request and attorney's explicit instructions to calendar deadline; this was not simply forgetting, and the transition and reasonable mistake of new legal assistant showed system breakdown); *Pierre v. Am. Sec. Ins. Co.*, 346 So. 3d 62, 63–64 (Fla. 4th DCA 2022) (finding excusable neglect because firm's "legal assistant responsible for scheduling" attached affidavit to 1.540 motion averring it was his mistake that made attorney miss case management conference).[3]

---

[3] One cannot help but wonder in these situations whether the clerical personnel are simply taking the fall for the mistakes and

Courts are less forgiving when attorneys are to blame, and rightly so, given attorneys' professional and ethical obligations and their higher level of control. *See Bequer v. Nat'l City Bank*, 46 So. 3d 1199, 1200–02 (Fla. 4th DCA 2010) (finding gross negligence, and thus no excusable neglect, where attorney and "system" missed initial complaint, three cover letters, defaults, and proposed final default judgments, and did not respond to entry of default judgment or move to set it aside for 19 days).

This case is procedurally similar to, but legally distinguishable from, *Housen*, which the homeowners have filed as supplemental authority. In *Housen*, the insureds' counsel failed to timely file the post-arbitration motion for trial. 401 So. 3d at 370. The untimeliness was not admitted in the initial 29-day-late filing, and apparently not caught by the insurer. *Id.* In a second motion for trial filed 45 days late, the insureds' counsel blamed "clerical error where the deadline was not properly calendared." *Id.* The court rejected counsel's arguments, and counsel tried again with a new motion and a legal secretary's affidavit admitting failure to calendar the deadline. *Id.* The trial court again denied relief. *Id.* at 370–71.

The appellate court reversed, finding that the sworn affidavit by a legal secretary admitting a secretarial calendaring error was sufficient to demonstrate excusable neglect. *Id.* at 371. The court cited two additional cases involving similar facts: *Barton Protective Service, LLC v. Redmon*, 387 So. 3d 353, 355–56 (Fla. 3d DCA 2023) ("It is well-established Florida law that excusable neglect is found where an inadvertent calendaring error results in an attorney's failure to act."); and *Polymer*.

Neither *Barton* nor *Polymer* nor any case cited in them is like the situation presented here, where there are no secretarial or other clerical affidavits, nor any affidavit demonstrating secretarial/clerical fault. In contrast, this record contains clear evidence of attorney negligence. In *Barton,* three lawyers assigned

---

omissions, but that is why on-point statements under oath from all relevant personnel, and hearing transcripts, are so important.

to the same case agreed that they would move for a trial de novo, but failed to assign responsibility for doing it, and none of them actually did it. 387 So. 3d at 354. The *Barton* court expressly noted that it addressed only the issue of whether the attorneys were entitled to a hearing on their claim of excusable neglect, expressly not passing upon any other issues. *Id.* at 355 & n.1. This procedural disposition has no bearing on this case, where the trial court held a hearing (and it was not transcribed).

Neither is *Polymer* controlling, because its facts were materially different. There, it was the legal assistant who was in the process of leaving the firm, not the lawyer as was the case here. 374 So. 3d at 37. That assistant first failed to calendar the deadline, and then her replacement, brand new on the job, mistakenly assumed she did not need to calendar it because a new order set a trial date. *Id.* There was no evidence that the responsible lawyer caused the failure to file, as was evident here.

Putting aside the more common but factually inapposite clerical-negligence cases, we are left with a clear case of attorney misfeasance. On the scale of fault, this is far closer to the "gross negligence" end of the spectrum laid out in *Somero*. We repeat observations we made in *Emerald Coast Utilities Authority v. Bear Marcus Point, LLC*, 227 So. 3d 752 (Fla. 1st DCA 2017), a case involving a law firm's intentional cost-saving decision to program its e-mail system in a way that identified court-service documents as spam, causing it to miss notices of upcoming deadlines. We analogized that firm's decision to an earlier federal case in which the court rejected a law firm's excusable-neglect defense against failing to find out a motion was pending:

> Mr. Wiley's evidence on the cause for the delay is the digital age equivalent of 'the dog ate my homework.' Mr. Wiley claims that e-mail difficulties prevented discovery of C.D.S.'s pending motion, but this evidence demonstrates that these difficulties were entirely self-created. . . . An inability to manage an office e-mail system to properly receive notices of filing does not qualify as excusable neglect.

11

*Emerald Coast*, 227 So. 3d at 757 (quoting *Crocker v. Child Dev. Sch., Inc.*, No. 3:10-CV-759-WKW, 2011 WL 4501560, at \*5 (M.D. Ala. Sept. 29, 2011)). So too here, the homeowners' lawyers created this situation, and deprived their clients of the trial to which they were entitled.

Equally pertinent here are our closing observations in *Emerald Coast* about what could have happened if only the law firm had undertaken the low-tech but simple expedient of regularly *checking the court docket*:

> [O]pposing counsel . . . had a protocol where an assigned paralegal would check the court's website every three weeks to see if the court had taken any action or entered any orders. If Odom & Barlow had a similar procedure in place, the firm would have received notice of the order assessing attorneys' fees in time to appeal. The neglect of Odom & Barlow's duty to actively check the court's electronic docket was not excusable where the parties knew that the trial court would be issuing a final order subject to appeal within jurisdictional time limits.

*Emerald Coast*, 227 So. 3d at 757–58 (citing six other cases noting that the lawyers or law firms had a duty to check the docket—though we think every three weeks is likely too infrequent). As in *Emerald Coast*, the Morgan Law Group lawyers "made no effort to do any of these things [monitoring], reflecting an overall pattern of inaction and disengagement. In short, there was an absence of 'any meaningful procedure in place that, if followed, would have avoided the unfortunate events that resulted in a significant judgment against'" the innocent homeowners here. *See id.* at 758 (quoting *Hornblower v. Cobb*, 932 So. 2d 402, 406 (Fla. 2d DCA 2006)).

As we indicated throughout our recitation of the facts above, the law firm adopted a striking—and inappropriate—tactic both below and on appeal of blaming USAA's attorney and blaming the arbitrator rather than focusing the blame where it belonged, on the firm itself. It was not opposing counsel's obligation to save the Morgan lawyers from their oversights. And it is no excuse to point to the instances where certificates of service listed an earlier

lawyer—a mistake the Morgan side also made. Looming large over all of the evidence is the Morgan firm's failure to follow the trial court's clear instructions for filing notices of appearance and designations of service each time the responsible lawyer changed, and updating the court's e-filing and e-service portal with each change. The firm's filings below and on appeal carefully avoid acknowledging that service would have occurred automatically through the portal—and would have been accurate if they had updated the portal conscientiously. If they had done that, and checked the docket as a backup, none of this would have happened.

In conclusion, we agree with one of the arguments the Morgan firm made to the trial court about the drastic impact that the firm's failures had on the Hannifords:

> [The Hannifords] diligently communicated to their counsel that they could not accept such a low award from the non-binding arbitration, as it was far from sufficient to account for the covered damages they sustained. They trusted their counsel to protect their interests and, thus, should not be punished for their counsel's inadvertence.

On the facts presented, though, the Hannifords cannot get that relief in this proceeding.

AFFIRMED.

ROBERTS, J., concurs; ROWE, J., concurs in result.

————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

————————————

Margaret E. Kozan and Daniel Noffsinger of Losey PLLC, Orlando; and Steven Johnson of Morgan Law Group, P.A., Coral Gables, for Appellants.

Mark D. Tinker and Brandon J. Tyler of Cole, Scott & Kissane P.A., Tampa, for Appellee.