# Third District Court of Appeal
## State of Florida

Opinion filed February 22, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-17
Lower Tribunal No. 18-34310
_____

**Clear 2 Close Title, LLC,**
Appellant,

vs.

**Zap Capital, Inc., et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Carlos Guzman, Judge.

Law Offices of Carlos Cruanes, P.A., and Carlos Cruanes, for appellant.

Lamchick Law Group, P.A., and Ronald Pereira, for appellees.

Before EMAS, SCALES and HENDON, JJ.

HENDON, J.

Clear 2 Close Title, LLC ("C2C") appeals from a final order denying its emergency verified motion to vacate default final judgment and to quash service of the writ of garnishment, and denying its verified motion for rehearing after an evidentiary hearing. We affirm in part, and reverse in part.

Facts

Zap Capital, Inc. and Z. Zapata Investments, LLC (collectively, "Zap") invested in certain high-end residential real estate properties marketed by InvestQuest entities, a real estate acquisition and sales business. The defendants below, the InvestQuest entities and Jose Parilla ("Parilla"), InvestQuest's president, allegedly breached the contracts and Zap sued.[1] Zap obtained default final judgments[2] against the defendants, including Parilla.

On September 7, 2021, Zap obtained an order of continuing writ of garnishment against C2C, a real estate closing company, which Zap maintained allegedly employed Parilla, demanding C2C answer the writ. C2C was ordered to serve an answer to the writ within twenty days of its

---

[1] Defendants below include Jose Parilla, InvestQuest Partners, Inc., InvestQuest Partners North, InvestQuest Partners Holdings, Inc., and InvestQuest Partners South, Inc.

[2] An amended default final judgment was entered solely to add an omitted defendant, IQP Properties (a party not relevant to this appeal), in October 2020.

service, and to state whether C2C, as garnishee, is Parilla's employer and owes him any money. The continuing writ of garnishment was served on C2C.[3] When C2C failed to answer the writ within the twenty-day period, Zap moved for default final judgment against C2C. A final default judgment was entered against C2C for $1,531,514.40 plus $6,120 in fees and $717.62 in costs.

Upon learning of the default judgment, on October 28, 2021, C2C filed an emergency motion to vacate the default, quash service of process, and quash the writ of garnishment. At the November 8, 2021 virtual hearing on C2C's emergency motion, C2C alleged that the service of process was defective as it was improperly served on an "assistant" who was no longer employed by C2C, who was not the registered agent or authorized to accept service for the corporation, and who did not forward the service of process to C2C's owner and manager, Nancy Acosta. C2C contended it only became aware of the case when the default final judgment was entered against it, at which point it acted with due diligence to quash the default. Further, C2C contested Zap's allegation that Parilla was employed by C2C,

---

[3] The service of process of the writ of garnishment against C2C stated it was served at C2C's address (no suite number) to "Anaya Aragon assistant," "an authorized agent, who stated they were authorized to accept for the witness [Parilla] in their absence."

3

arguing it never employed Parilla and it owes Parilla no money. C2C also asserted that the funds garnished were in an escrow account and therefore the funds belonged to C2C clients, not to C2C. The trial court denied the motion, and C2C moved for rehearing.[4]

On April 25, 2022, the trial court held an evidentiary hearing on C2C's motion for rehearing. C2C argued that service was defective because the writ was served on a receptionist who worked for three companies, and she never delivered the writ to C2C. Because C2C never received the writ, it was unable to timely retain counsel to file a response indicating that Parilla was not an employee.

Zap's counsel, Mr. Pereira, argued in rebuttal that C2C's former counsel, Mr. Gittle, conceded the service of process issue in the hearing on C2C's original emergency motion to quash service, vacate the default final judgment, and quash the writ of garnishment. The following exchange took place between C2C's former counsel, Mr. Gittle, and the court at the November 8, 2021 hearing on C2C's 1.540 motion to vacate default, quash service, and quash writ of garnishment:

> **THE COURT:** If Clear [C2C] wants to go forward on both [motions] and take testimony and introduce exhibits, then, you know, we'll have a full-blown evidentiary hearing on the quashing

---

[4] C2C also filed a notice of appeal, and this Court temporarily relinquished jurisdiction so that the trial court could hear the motion for rehearing.

4

<u>of service</u>. I do think that on the FJ part it is a little bit more argument in nature, and less evidentiary in nature. You know, but I welcome you guys to jump in here on that.

**MR. GITTLE** [C2C's counsel]: Your Honor, we can -- so, <u>we can move forward just upon the vacating of final judgment.</u> We feel the rest of the matter will take care of itself thereafter. The garnishee [debtor Parilla] was never an employee. He was an independent contractor and is no longer contracted by the company. So, the rest of the matters should work itself out naturally on its own.

**. . . .**

**THE COURT**: Okay. Mr. Gittle? And I'm not trying to put you on the spot here. Maybe you know all this. Maybe you don't know any of it. So, I wanted to give you a chance to respond.

**MR. GITTLE**: Your Honor, <u>we're here today simply to vacate the default.</u> We vacate the default, we can handle those matters, whether he [Parilla] was an employee, independent contractor another day. We're here to vacate –

**THE COURT**: <u>Yeah, but I don't know that you can separate the default from service, because if you don't have service, the default is a moot point.</u>

**MR. GITTLE**: Yes, your Honor, but in the interests of time, we can move forward just with the default then.

**THE COURT**: <u>So, you're conceding service</u>?

**MR. GITTLE**: We . . .

**THE COURT**: <u>And in fairness to you, Ms. Acosta [C2C'S owner, Gittle's client] is nodding a no. So, I, you know, I don't know that you can reconcile the two. I don't know that you can say: We're contesting service, but, you know, let's go forward on the default</u>.

**MR. GITTLE**: Your Honor, the most important thing for my client is to have the default vacated. <u>So, if we have to concede</u> –

5

**THE COURT**: Well, I would say the most important part for her is to vacate the judgment. Sure. I get that.

**MR. GITTLE**: <u>At this point we can move forward simply on the motion to vacate judgment</u>. And so long as that's done, I think that's fair. My client, I believe, would even accept service if as soon as it was quashed. The issue really is that judgment that's ongoing, and there is currently a garnishment outstanding against my client. They have already garnished a few of my client's bank accounts, including an escrow account.
So, that's the nature of the emergency today, <u>and why we're willing to forego the service issue</u>, and simply focus on the vacate -- vacation of the default –

 . . .

**MR. GITTLE**: and allowing my client to present a defense.

**MR. PEREIRA** [Zap's counsel]: Respectfully, your Honor, had they, you know, done what they had to do and answer, you know, they wouldn't be in this position. But if they're going -- <u>if they're going to concede on service, fine. Let's talk about the motion to vacate</u>.

(Emphasis added).  After hearing both parties' remaining arguments, the trial court did not explicitly rule on the service of process issue, but stated it would focus on the requirements for vacating the default judgment. The court ultimately denied C2C's motion on rehearing. This appeal followed.

Of the six issues raised by C2C in this appeal, we address only two: the trial court's denial of C2C's motion to quash service of process, and the trial court's denial of C2C's motion to vacate the default final judgment.  The remaining issues on appeal hinge on the outcome of these issues.

6

Our standard of review of a motion for relief from judgment is whether the trial court abused its discretion. "Because a trial court is accorded broad discretion in determining rule 1.540(b) motions, the standard of review of an order on a rule 1.540(b) motion for relief from judgment is whether there has been an abuse of the trial court's discretion." Rinconcito Latino Cafeteria, Inc. v. Ocampos, 276 So. 3d 525, 527 (Fla. 3d DCA 2019) (quoting Tikhomirov v. Bank of New York Mellon, 223 So. 3d 1112, 1116 (Fla. 3d DCA 2017) (quoting Freemon v. Deutsche Bank Tr. Co. Ams., 46 So. 3d 1202, 1204 (Fla. 4th DCA 2010)). A trial court's ruling on a motion to quash service of process, to the extent it involves questions of law, is subject to de novo review. Mecca Multimedia, Inc. v. Kurzbard, 954 So. 2d 1179, 1181 (Fla. 3d DCA 2007).

Discussion

C2C argued at the initial hearing on its motions to vacate the default and quash service of process that service of process was allegedly made on a front office receptionist that worked for three companies operating out of that suite. Testimony from C2C's president, and C2C's title agent, indicates that the papers languished in a desk drawer for several weeks before C2C personnel discovered them and immediately sought to vacate the default. Zap's counsel, however, argued that C2C's original counsel conceded the

7

service of process issue. The transcript of C2C's former counsel's argument at the initial emergency motion to quash hearing indicates that C2C waived the defective service of process issue in favor of arguing to vacate the default final judgment.  Although the trial court made no explicit ruling on the service of process issue, it did indicate by its comments at the end of the hearing that it was focusing on the rule 1.540 requirements of due diligence and meritorious defenses to the default final judgment. Our review of the record leads us to conclude that C2C waived the defective service of process issue.

However, the record shows that C2C acted with due diligence in pursuing a rule 1.540 motion to vacate the final default judgment upon its discovery of the mishandled documents. Zap did not rebut those facts. Further, the trial court did not make any findings in the evidentiary hearing or in its summary orders regarding C2C's motion to vacate the default judgment.  As this Court has explained,

> Florida has a long-standing policy in favor of deciding lawsuits on their merits. Thus, "if there be any reasonable doubt in the matter [of vacating a default], it should be resolved in favor of granting the application and allowing a trial upon the merits of the case." North Shore Hosp., Inc. v. Barber, 143 So. 2d 849, 852–53 (Fla.1962). The Fourth District has explained: [W]here inaction results from clerical or secretarial error, reasonable misunderstanding, a system gone awry or any other of the foibles to which human nature is heir, then upon timely application accompanied by a reasonable and credible explanation the matter should be permitted to be heard on the merits. It is a gross abuse of discretion for the trial court to rule otherwise. Somero v.

8

Hendry General Hosp., 467 So. 2d 1103, 1106 (Fla. 4th DCA 1985).

Edwards v. Najjar, 748 So. 2d 1101, 1103 (Fla. 3d DCA 2000) (citations omitted).

Accordingly, we reverse that part of the order denying C2C's motion to vacate the final default judgment and remand to allow the court to rule on the merits of the case. We affirm that part of the order denying C2C's motion to quash service of process. Our decisions render C2C's remaining arguments on appeal moot.

Affirmed in part; reversed in part and remanded.